CONNIE CHANDLER, Employee, Plaintiff, by her Guardian Ad Litem, CELESTE M. HARRIS v. ATLANTIC SCRAP & PROCESSING, Employer, and LIBERTY MUTUAL INSURANCE COMPANY, Carrier, Defendants

No. COA11-618

(Filed 20 December 2011)

### 1. Workers' Compensation—unpaid award—family provided care services—interest denied

The Industrial Commission erred as a matter of law in a workers' compensation action by denying plaintiff interest on an award of unpaid attendant care. Such interest is mandatory under N.C.G.S. § 97-86.2 and an interest award to family members who were taking care of plaintiff instead of directly to plaintiff was upheld in *Palmer v. Jackson*, 161 N.C. App. 642.

### 2. Workers' Compensation—attendant care services—family members—other employment

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff was entitled to attendant care services provided by her husband. An award of attendant care services provided by the victim's family member does not require preauthorization and the family member does not have to give up other employment to be compensated.

### 3. Workers' Compensation—attendant care services—family member—rate of compensation

There was competent evidence in a workers' compensation case to support the Industrial Commission's determination of the rate at which plaintiff's husband should be compensated for providing attendant care services.

**4. Workers' Compensation—attorney fees—claim unreasonably defended**

> The Industrial Commission did not abuse its discretion in a workers' compensation case by determining that defendants unreasonably defended plaintiff's claim and awarding attorney fees pursuant to N.C.G.S. § 97-88.1.

Appeal by plaintiff and cross-appeal by defendants from opinions and awards entered 25 February 2010 and 7 February 2011 by the North Carolina Industrial Commission. Heard in the Court of Appeals 27 October 2011.

> *Walden & Walden, by Daniel S. Walden, for plaintiff appellant, cross-appellee.*

> *Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Matthew J. Ledwith, for defendant appellees, cross-appellants.*

McCULLOUGH, Judge.

Plaintiff Connie Chandler ("plaintiff") appeals from an opinion and award of the North Carolina Industrial Commission (the "Commission") declining to award interest to plaintiff on an award of unpaid attendant care services. Defendants Atlantic Scrap & Processing ("Atlantic Scrap") and Liberty Mutual Insurance Company ("Liberty Mutual," collectively, "defendants") cross-appeal the Commission's decision awarding plaintiff compensation for attendant care services and attorneys' fees pursuant to N.C. Gen. Stat. § 97-88.1 (2009). We reverse the Commission's order declining to award interest to plaintiff, and we otherwise affirm the Commission's order awarding plaintiff compensation for attendant care services and attorneys' fees. We also grant plaintiff's motion for attorneys' fees incurred during the pendency of this appeal pursuant to N.C. Gen. Stat. § 97-88 (2009).

## I. Background

Plaintiff began working for Atlantic Scrap, a metal recycling facility, in 1994. Plaintiff was hired to clean Atlantic Scrap's three buildings. On 11 August 2003, plaintiff began her work duties with Atlantic Scrap at 7:00 a.m. As plaintiff was walking down a flight of concrete steps, she accidentally fell backwards, striking the posterior portion of her head and neck on the steps. When EMS personnel arrived at the scene, plaintiff was confused and agitated and had a

bruise with swelling on the back of her head. Plaintiff's primary complaints at that time were headache and neck pain. Upon arriving at the hospital, plaintiff related to the treating physician that she went up a flight of stairs to begin her work when she slipped and fell, hitting her head on the stairs. Plaintiff also mistakenly stated that the month was January and that it was cold outside, despite that the month was August, and plaintiff was unaware of the year. Nonetheless, all radiological tests were negative. Plaintiff was determined to have sustained a concussion or closed head injury, a neck injury, and a right partial rotator cuff tear, all due to her fall.

After her fall, during the period from 13 August 2003 through November of that year, plaintiff treated with her primary care physician, Dr. Norman Templon ("Dr. Templon"). Plaintiff's primary symptoms from her fall continued to be global headaches, right shoulder pain, neck pain, dizziness, and insomnia. Plaintiff also developed depression due to her injuries.

In October 2003, plaintiff's husband, Lester Chandler ("Mr. Chandler"), advised Dr. Templon that plaintiff had been having significant memory problems, sensitivity to light, and some nausea and vomiting almost every day since her fall. On 31 October 2003, a brain MRI revealed that plaintiff had evidence of small vessel ischemic changes in her white matter. By November 2003, plaintiff had constant occipital headaches and frequent crying spells.

In November 2003, Dr. Templon diagnosed plaintiff as suffering from cognitive impairments secondary to post-concussive syndrome. Dr. Templon referred plaintiff to neuropsychologist Cecile Naylor ("Dr. Naylor") for evaluation of plaintiff's cognitive functioning and memory. On 3 December 2003, testing by Dr. Naylor revealed that plaintiff had selective deficit in verbal memory, impaired mental flexibility, depression, and a low energy level.

On 23 December 2003, Dr. Templon recommended that plaintiff also see a neurologist. Defendants directed plaintiff to see neurologist Carlo P. Yuson ("Dr. Yuson"). Plaintiff presented to Dr. Yuson on 14 January 2004, complaining primarily of frequent headaches and memory problems since her fall. Dr. Yuson diagnosed plaintiff as suffering from post-concussive syndrome from her fall, along with depression secondary to her fall. Plaintiff continued to see Dr. Yuson throughout March, April, and May 2004, presenting the following continuing symptoms: severe headaches, memory problems, dizziness, crying spells, insomnia, cognitive problems, and depression. Dr. Yuson

recommended that plaintiff be re-evaluated concerning her cognitive functioning and memory problems.

On 3 May 2004, Liberty Mutual assigned Nurse Bonnie Wilson ("Nurse Wilson") to provide medical case management services for plaintiff's claim. Nurse Wilson arranged for plaintiff's cognitive functioning and memory to be re-evaluated by Dr. Naylor. Plaintiff presented to Dr. Naylor for testing on 28 June 2004, tearful and clinging to Mr. Chandler. Testing revealed the following: (1) plaintiff's intellectual functioning had fallen from the borderline to impaired range; (2) plaintiff's memory functioning revealed a sharp decline into the impaired range in all areas; (3) plaintiff had a significant compromise in her conversational speech, *i.e.*, plaintiff only spoke when spoken to, her responses were often short and often fragmented and confused, and plaintiff had difficulty responding to questions. Plaintiff also exhibited the following symptoms: (1) inability to answer questions; (2) fearful and reliant on Mr. Chandler; (3) hears people in the home without any basis; (4) is afraid to go anywhere alone, even in her own home; (5) is easily upset; (6) has significant confusion, as her speech makes no sense; (7) has poor concentration and memory; (8) her moods change quickly; (9) is incapable of performing even simple tasks of daily living; (10) is unable to cook anything; (11) takes naps during the day due to frequent insomnia at night; (12) has decreased appetite and poor energy; (13) cries easily; and (14) feels worthless. All of these test results and symptoms indicated that as of 28 June 2004, plaintiff suffered from severe and global cognitive deficits in higher cortical functioning, all as a result of her 11 August 2003 fall at work.

Beginning on or before 28 June 2004, plaintiff has been incapable of being alone and has been unable to perform most activities of daily living without assistance from Mr. Chandler. Plaintiff has required constant supervision and attendant care services on a 24-hours-a-day/7-days-a-week basis, including at night, due to her severe cognitive impairments, insomnia, paranoia, and fear of being alone. Mr. Chandler has provided the required constant attendant care services to plaintiff for the period beginning at least 28 June 2004 and continuously thereafter, without any compensation for his services.

On 20 July 2004, Dr. Naylor reported plaintiff's severe cognitive and memory impairments to Nurse Wilson, discussing Dr. Naylor's written evaluation report and conclusions with Nurse Wilson. Dr. Naylor informed Nurse Wilson that plaintiff's cognitive and mental condition had greatly deteriorated since prior testing in early Decem-

ber 2003 and that plaintiff was no longer capable of caring for herself and needed constant supervision, which out of necessity was being provided by Mr. Chandler. On 23 August 2004, plaintiff was determined to have reached maximum medical improvement in relation to her traumatic brain injury resulting from her fall. On 21 September 2004, defendants filed a Form 60 Employer's Admission of Employee's Right to Compensation for a "concussion to the back of the head," reporting payment of temporary total disability compensation at $239.37 per week from the date of 11 August 2003.

On 27 October 2004, plaintiff presented to Dr. Yuson, accompanied by Nurse Wilson. Dr. Yuson notified Nurse Wilson that, in his opinion, plaintiff would never get any better mentally than she was as of 23 August 2004, when plaintiff was determined to have reached maximum medical improvement. Dr. Yuson again discussed Dr. Naylor's 20 July 2004 report with Nurse Wilson, including that plaintiff required constant attendant care services due to her cognitive and emotional impairments resulting from her fall. However, defendants elected not to secure attendant care services or pay Mr. Chandler for the attendant care services he provided to plaintiff.

In the period from January 2005 through October 2007, plaintiff's cognitive and emotional condition continued to slowly become worse, regressing to that of a four-year-old child due to her brain injury from her fall at work. In April 2008, Dr. Yuson opined in a written note that plaintiff was permanently totally disabled due to her brain injury from her fall at work.

In March 2009, Dr. Yuson again noted that plaintiff had continued to get worse in her cognitive and emotional conditions. On 3 April 2009, occupational therapist and life care planner Vickie Pennington ("Ms. Pennington") prepared a life care plan concerning plaintiff. Ms. Pennington's recommendations concerning plaintiff's care included, *inter alia*, that plaintiff needs constant attendant care for her lifetime, that plaintiff needs attendant care services in her home rather than in an institution or outside facility, and that it is not healthy or reasonable or best for plaintiff that Mr. Chandler continue to care for plaintiff exclusively. Dr. Yuson reviewed Ms. Pennington's life care plan, which he opined was medically necessary and reasonable for plaintiff.

On 27 August 2008, plaintiff filed a Form 33 Request that Claim be Assigned for Hearing, seeking "payment of attendant care services by [her husband] Lester Chandler beginning [20 July 2004] forward," and

an award of permanent total disability. On 12 April 2009, defendants filed a Form 33R response denying plaintiff's claim for the following reasons: (1) plaintiff's "current medical condition" was not causally related to her accident; (2) plaintiff was not permanently and totally disabled; and (3) plaintiff was not entitled to payment for attendant care services "rendered prior to written approval of the Commission, which has yet to be obtained."

An initial hearing was held before Deputy Commissioner Robert Wayne Rideout, Jr. ("Deputy Commissioner Rideout") on 13 April 2009. Plaintiff presented the testimony of Ms. Pennington and Mr. Chandler, as well as the deposition testimony of Dr. Yuson. Defendants presented no evidence or testimony at the hearing. On 10 August 2009, Deputy Commissioner Rideout filed his opinion and award, finding and concluding that plaintiff's injuries were caused by her August 2003 fall at work; that plaintiff is permanently totally disabled; and that plaintiff is entitled to have defendants provide all medical compensation due to her accident, including the constant around-the-clock attendant care services provided by Mr. Chandler for the period beginning 28 June 2004 and the services set out in the life care plan. Deputy Commissioner Rideout also concluded that defendants had defended the matter without reasonable ground and ordered defendants to pay attorneys' fees for plaintiff's attorney pursuant to N.C. Gen. Stat. § 97-88.1. Deputy Commissioner Rideout awarded Mr. Chandler the rate of $15.00 per hour for the constant attendant care services he has provided to plaintiff for the period beginning 28 June 2004 and each day thereafter.

On 25 August 2009, defendants appealed Deputy Commissioner Rideout's opinion and award to the Full Commission. On 20 November 2009, plaintiff moved the Commission to award interest on the past due attendant care pursuant to N.C. Gen. Stat. § 97-86.2 (2009), to be paid by defendants directly to Mr. Chandler. On 25 February 2010, the Commission filed its opinion and award, generally affirming Deputy Commissioner Rideout's opinion and award, but changing the hourly rate for attendant care services payable to Mr. Chandler to $11.00 per hour for 15 hours per day, rather than $15.00 per hour for 24 hours per day. The Commission declined to award interest to Mr. Chandler "in its discretion."

On 26 February 2010, plaintiff filed a motion to amend the Commission's 25 February 2010 opinion and award, this time seeking an order of mandatory payment of interest to plaintiff, instead of to

Mr. Chandler, pursuant to N.C. Gen. Stat. § 97-86.2. On 7 February 2011, the Commission filed an order declining to award plaintiff the interest. Plaintiff and defendants filed timely notices of appeal to this Court.

## II.  Standard of Review

Review of an opinion and award of the Industrial Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008). "A finding of fact is conclusive and binding on appeal so long as there is some evidence of substance which directly or by reasonable inference tends to support the findings, . . . even though there is evidence that would have supported a finding to the contrary." *Byrd v. Ecofibers, Inc.*, 182 N.C. App. 728, 731, 645 S.E.2d 80, 81 (2007) (omission in original) (internal quotation marks and citations omitted). Thus, "[t]his 'court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Richardson*, 362 N.C. at 660, 669 S.E.2d at 584 (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). We review the Commission's conclusions of law de novo. *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004).

## III.  Plaintiff's appeal

### A. *Interest on award of unpaid medical expenses*

**[1]** Plaintiff's sole issue on appeal is whether the Commission erred as a matter of law in denying interest to plaintiff on the award of unpaid attendant care, accruing from the date of the initial hearing until paid by defendants. Plaintiff contends payment of such interest by defendants is mandatory pursuant to N.C. Gen. Stat. § 97-86.2. We agree.

N.C. Gen. Stat. § 97-86.2 provides:

> In any workers' compensation case in which an order is issued either granting or denying an award to the employee and where there is an appeal resulting in an ultimate award to the employee, the insurance carrier or employer *shall* pay interest on the final award or unpaid portion thereof from the date of the initial hearing on the claim, until paid at the legal rate of interest provided in G.S. 24-1.

*Id.* (emphasis added). "It is well established that 'the word "shall" is generally imperative or mandatory.' " *Multiple Claimants v. N.C. Dep't of Health & Human Servs.*, 361 N.C. 372, 378, 646 S.E.2d 356, 360 (2007) (quoting *State v. Johnson*, 298 N.C. 355, 361, 259 S.E.2d 752, 757 (1979)). Thus, the statutory language of N.C. Gen. Stat. § 97-86.2 confers no "degree of discretion" on the Commission in determining an interest award "given the presence of the circumstances delineated in the relevant statutory language." *Puckett v. Norandal USA, Inc.*, No. COA10-805 (N.C. Ct. App. May 3, 2011), slip op. at 15.

In *Childress v. Trion, Inc.*, 125 N.C. App. 588, 481 S.E.2d 697 (1997), this Court reiterated the three goals of awarding interest to workers' compensation claimants, as announced by our Supreme Court: " '(a) [T]o compensate a plaintiff for loss of the use value of a damage award or compensation for delay in payment; (b) to prevent unjust enrichment to a defendant for the use value of the money, and (c) to promote settlement.' " *Id.* at 592, 481 S.E.2d at 699 (quoting *Powe v. Odell*, 312 N.C. 410, 413, 322 S.E.2d 762, 764 (1984)). In Childress, we explained that "[a]ll of these goals are met by the payment of interest on an award of medical expenses to workers' compensation claimants." *Id.* Therefore, "any award of medical compensation for the plaintiff's benefit is covered by G.S. 97-86.2." *Id.* at 591, 481 S.E.2d at 699.

The term "medical expenses" encompasses attendant care services rendered by an injured worker's family members. *See London v. Snak Time Catering, Inc.*, 136 N.C. App. 473, 480, 525 S.E.2d 203, 208 (2000) ("Our Supreme Court has . . . authorized payment to family members for attendant care provided to an injured family member."). Moreover, this Court has expressly upheld an award of interest on a plaintiff's outstanding medical expenses in the form of attendant care services where the Commission awarded the benefits directly to the family members who were taking care of the plaintiff, instead of to the plaintiff himself. *See Palmer v. Jackson*, 161 N.C. App. 642, 649, 590 S.E.2d 275, 279 (2003). In *Palmer*, this Court stated that "the fact that the money is going directly to the two relatives who are taking care of a worker in a vegetative state, rather than the worker himself, does not preclude the Full Commission from awarding interest." *Id.*

In the present case, after the initial hearing on 13 April 2009, Deputy Commissioner Rideout awarded plaintiff the cost of attendant care services, from which defendants appealed to the Full Commission. The Commission likewise awarded plaintiff the costs of attend-

ant care services, although the Commission modified the award amount. According to the statutory mandate, the Commission was required to determine an award of interest to plaintiff on the amount of unpaid attendant care services, accruing from the date of the initial hearing in this matter, to be paid by defendants. *See Puckett*, No. COA10-805, slip op. at 16 (requiring the Commission to comply with the applicable statutory language regarding interest calculations, "which does not give the Commission any discretion in making the required determination"). Further, because we see no meaningful distinction in the facts of *Palmer* and the facts of the present case, we hold the Commission may award such interest to Mr. Chandler given plaintiff's significant cognitive impairments. *See Palmer*, 161 N.C. App. at 649, 590 S.E.2d at 279. Therefore, we must reverse the Commission's order denying such interest and remand the matter to the Commission on this issue.

### IV. Defendants' appeal

#### A. *Award to plaintiff for attendant care services*

[2] Defendants' first argument on appeal is that the Commission erred in awarding plaintiff compensation for attendant care services. Defendants contend that pursuant to the Commission's "Medical Fee Schedule," plaintiff was required to obtain written authority from the Commission to recoup fees associated with the rendition of attendant care services by Mr. Chandler. Defendants further contend they were not advised of plaintiff's attendant care needs, and nevertheless, Mr. Chandler was not forced to give up other employment to care for plaintiff. Defendants' arguments have no merit.

First and foremost, in *Boylan v. Verizon Wireless*, 201 N.C. App. 81, 685 S.E.2d 155 (2009), this Court expressly rejected defendants' argument "that plaintiff never requested prior approval for such services in violation of the fee schedule established by the Industrial Commission pursuant to N.C. Gen. Stat. § 97-26(a) and was therefore not entitled to attendant care benefits." *Id.* at 85, 685 S.E.2d at 158. Rather, in *Boylan*, this Court upheld the Commission's ordering the defendants to pay benefits for attendant care services provided to the plaintiff by her family members, reasoning that N.C. Gen. Stat. § 97-90(a) is the applicable statute requiring preauthorization for medical fees and that, based on our prior holding in *Ruiz v. Belk Masonry Co.*, 148 N.C. App. 675, 559 S.E.2d 249 (2002), an award of attendant care benefits provided by the injured plaintiff's family member did not require preauthorization under that statute. *Boylan*, 201 N.C. at 86, 685 S.E.2d at 158-59.

Furthermore, we do not read our case law as imposing a requirement that, in order for an injured plaintiff's family member to be compensated for providing attendant care services, the family member must have given up other employment to render the services to the injured plaintiff. To the contrary, our holding in *Ruiz* upheld an award of attendant care benefits to the injured plaintiff's brother, where the brother continued to hold employment for 4-5 hours per day, five days a week. *Ruiz*, 148 N.C. App. at 680-81, 559 S.E.2d at 253.

Finally, defendants' argument that they were given no notice of plaintiff's need for attendant care services is also without merit. On this issue, defendants do not specifically challenge any of the Commission's findings of fact, and therefore, they are binding on this Court.

The Commission made the following pertinent findings of fact:

15. On May 3, 2004 carrier Liberty Mutual assigned its Nurse Bonnie Wilson to provide medical case management services in plaintiff's claim. Nurse Wilson arranged for plaintiff to be reevaluated by Dr. Naylor on June 28, 2004.

16. On June 28, 2004 Dr. Naylor re-evaluated plaintiff's cognitive functioning and memory. Plaintiff was tearful and clinging to her husband. . . .

. . . .

18. On July 20, 2004, Dr. Naylor gave her written evaluation report concerning plaintiff's severe cognitive and memory impairments to carrier's nurse Bonnie Wilson and also discussed the report and its conclusions with her. Dr. Naylor informed Ms. Wilson that plaintiff's cognitive and mental condition had greatly deteriorated since prior testing in early December 2003, and that plaintiff was no longer capable of caring for herself and needed constant supervision which out of necessity was being provided by her husband.

19. By at least July 20, 2004, the carrier was well aware that plaintiff required constant attendant care services, and that plaintiff's husband was providing constant attendant care services to plaintiff without any compensation for his services.

. . . .

24. On October 27, 2004, plaintiff saw Dr. Yuson, with Ms. Wilson in attendance. By this date, Dr. Yuson notified Ms. Wilson that, in his opinion, plaintiff would never get any better mentally than she was as of August 23, 2004. At this meeting, Dr. Yuson discussed Dr. Naylor's July 20, 2004 report with Ms. Wilson, including that plaintiff required constant attendant care services due to her cognitive and emotional impairments resulting from her fall.

25. On October 27, 2004, the carrier was well aware that plaintiff required constant attendant care services as provided by her husband due to her traumatic brain injury resulting from her August 11, 2003 fall. Defendants elected not to secure attendant services or pay plaintiff's husband for the attendant care services he provided plaintiff.

. . . .

28. By early December 2004, Dr. Yuson again notified defendant Liberty Mutual that plaintiff required constant supervision due to her cognitive and emotional impairments resulting from her brain injury due to her fall.

Significantly, defendants argue only that Nurse Wilson, as a medical professional, is not an agent of defendants and cannot be considered such for purposes of notice. Nonetheless, defendants neglect Finding of Fact number 28, in which the Commission expressly found as a fact that plaintiff's treating physician notified Liberty Mutual regarding plaintiff's need for constant supervision. As defendants do not challenge this finding of fact on appeal, it is binding on this Court, and supports the Commission's conclusion that defendants had notice of plaintiff's required attendant care services, which out of necessity, were being provided by Mr. Chandler. Thus, the Commission did not err in concluding that plaintiff was entitled to compensation for the attendant care services being provided by her husband, Mr. Chandler.

*B. Amount of compensation for attendant care services*

[3] Defendants argue that the Commission erred in determining that plaintiff's husband should be compensated at a rate of $11.00 per hour, for 15 hours per day. In particular, defendants take issue with the following finding of fact:

38. Based on a review of the evidence of record, the Full Commission, in its discretion, finds that the reasonable hourly rate of pay for plaintiff's husband to be compensated for providing the necessary attendant care services to plaintiff in the period beginning June 28, 2004 and thereafter is eleven dollars ($11.00) per hour, for fifteen hours per day.

Defendants argue this finding of fact is not supported by competent evidence in that the rate determination did not reflect the cost of care for an unskilled health care provider in the area where plaintiff actually lived and that the number of hours of compensation is unreasonable, given the time that plaintiff sleeps.

We hold there is competent evidence to support the Commission's finding in this regard. At the hearing, Ms. Pennington was certified as an expert "in the field of rehabilitation management with individuals with closed head brain trauma," including "a specialty in life care planning" and expert knowledge on the "cost for attendant care." Ms. Pennington testified that she had contacted three home health care agencies based in the Charlotte, North Carolina, area. However, Ms. Pennington testified that all three agencies provide services regionally, including the relevant area where plaintiff lives. Ms. Pennington testified that the base rate of the three agencies for attendant care with no special skills would be $17.00 per hour, with holidays and weekends averaging between $20.00 and $21.00 per hour. Ms. Pennington further testified that one of the home health care agencies paid an attendant $10.00 to $14.00 per hour. Ms. Pennington also testified that an attendant performing the kinds of services provided by Mr. Chandler could expect to receive more than $10.00 per hour in the area where plaintiff lives. Thus, the rate of $11.00 per hour, determined by the Commission, was supported by competent evidence in the record.

In addition, although there is ample evidence in the record to support the Commission's finding of fact that plaintiff required "constant supervision and attendant care services, that is, on a 24 hours a day, 7 days a week basis, including at night," the Commission could also reasonably find that Mr. Chandler should be compensated for such required care at least 15 hours per day, given the testimony by Dr. Yuson that plaintiff needs attendant care services "definitely when she's awake" and the testimony by Mr. Chandler that plaintiff suffers from insomnia, that her sleep periods may vary depending on whether she takes her medication, and that she requires supervision when she wakes during the night to go to the bathroom. Thus, this

finding is likewise supported by competent evidence in the record. Defendants' arguments on this issue therefore have no merit.

## C. Attorneys' fees

[4] Finally, defendants argue the Commission erred in awarding plaintiff attorneys' fees pursuant to N.C. Gen. Stat. § 97-88.1. We disagree.

N.C. Gen. Stat. § 97-88.1 provides the Commission with discretionary authority to assess costs and attorneys' fees for prosecuting or defending a hearing without reasonable grounds. *Id.* ("If the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them."). " '[T]he Commission's determination [of matters within its sound discretion] will not be reviewed on appeal absent a showing of manifest abuse of discretion.' " *Sprinkle v. Lilly Indus., Inc.*, 193 N.C. App. 694, 702, 668 S.E.2d 378, 383 (2008) (alteration in original) (quoting *Lynch v. M.B. Kahn Constr. Co.*, 41 N.C. App. 127, 131, 254 S.E.2d 236, 238 (1979)), *disc. review denied*, 363 N.C. 130, 673 S.E.2d 363 (2009).

In the present case, we find no abuse of discretion in the Commission's determination that defendants unreasonably defended plaintiff's claim. Most notably, defendants filed a Form 60 on 21 September 2004, accepting plaintiff's 11 August 2003 "concussion to the back of the head" as compensable. As detailed in the Commission's unchallenged findings of fact, prior to defendants' filing the Form 60, plaintiff's treating physicians had documented that plaintiff's extensive cognitive impairments were attributable to her 11 August 2003 fall and concussion, that plaintiff required constant attendant care services as a result, and that plaintiff had reached maximum medical improvement. Nonetheless, defendants defended against plaintiff's claim for permanent total disability compensation and attendant care services. Defendants challenged any causal connection between plaintiff's condition and her compensable fall, as well as whether plaintiff's husband was entitled to any attendant care benefits. Given the extensive medical documentation of plaintiff's condition and its causal relationship with plaintiff's 11 August 2003 fall, defendants' acceptance of plaintiff's claim via filing of a Form 60 after plaintiff had reached maximum medical improvement, and the recent holdings of this Court expressly establishing that attendant

care benefits may be awarded to an injured worker's family member without preauthorization, we find no abuse of discretion by the Commission in determining that defendants unreasonably defended plaintiff's current claim. For the same reasons, we grant plaintiff's current motion for attorneys' fees incurred during the pendency of this appeal.

## V. Conclusion

We hold the Commission's award to plaintiff of attendant care benefits for the services rendered by her husband at the rate of $11.00 per hour for 15 hours per day is both supported by the competent evidence in the record and the Commission's findings of fact. Because our case law expressly allows for an award of such benefits to family members, the Commission did not err in its award. We further hold the Commission did not abuse its discretion in determining that defendants have unreasonably defended against plaintiff's current claim, thereby awarding attorneys' fees pursuant to N.C. Gen. Stat. § 97-88.1. For these reasons, we affirm the Commission's opinion and award as to those issues.

However, because N.C. Gen. Stat. § 97-86.2 provides for a mandatory allowance of interest when the statutory conditions are present, as in the present case, we must reverse the Commission's order denying such interest award. We remand to the Commission for a determination as to the proper award of interest to plaintiff on the unpaid portion of attendant care services pursuant to the terms of N.C. Gen. Stat. § 97-86.2.

Affirmed in part, reversed in part, and remanded.

Judges HUNTER, JR., and THIGPE