BOYLAN v. VERIZON WIRELESS

[224 N.C. App. 436 (2012)]

SHERYL BOYLAN, Employee, Plaintiff

v.

VERIZON WIRELESS, Employer, SEDGWICK CMS, Carrier, Defendants

No. COA12-856

Filed 18 December 2012

**1. Appeal and Error—preservation of issues—no ruling on objection**

The issue in a workers' compensation case of whether a witness could testify as an expert was not preserved for appellate review where defendants did not obtain a ruling on their objection.

**2. Workers' Compensation—findings—attendant care**

Competent evidence supported the Industrial Commission's finding in a workers' compensation case that plaintiff would medically benefit from attendant care and the finding justified the Commission's conclusion awarding plaintiff the costs of attendant care. Determining the credibility and weight of conflicting testimony is solely the responsibility of the Commission, not the appellate court.

**3. Workers' Compensation—findings—attendant care—spinal cord stimulator**

The Industrial Commission in a workers' compensation case made the findings necessary to support its conclusions concerning attendant care even if it did not make specific findings about the effectiveness of treatment with a spinal cord stimulator.

**4. Workers' Compensation—findings—contrary evidence—conclusive on appeal**

Despite evidence to the contrary, competent evidence in a workers' compensation case supported the Industrial Commission's finding that eight hours of attendant care would be medically beneficial to plaintiff. That finding was conclusive on appeal and supported the award.

**5. Workers' Compensation—attendant care—payment rate for family member**

Evidence in a workers' compensation case concerning the rate paid for professional attendant care supported an award of a lesser amount to an unskilled family member.

**BOYLAN v. VERIZON WIRELESS**

[224 N.C. App. 436 (2012)]

**6. Workers' Compensation—findings—wheelchair ramps**

The evidence in a workers' compensation case was competent and supported the Industrial Commission's findings that plaintiff's wheelchair ramps should be replaced and the front ramp extended. Those findings justified the Commission's conclusion ordering defendants to pay for the work. Defendants' arguments concerning contrary medical opinions were unavailing.

**7. Workers' Compensation—attendant care—choice of provider**

The Industrial Commission did not err in a workers' compensation case by not allowing defendants to choose plaintiff's attendant care provider. Assuming that the selection of a surgeon (as in a prior case) is sufficiently similar to the selection of an attendant care provider, there was absolutely no evidence that defendants directed plaintiff to their chosen attendant care provider in a prompt and adequate manner, as they were required to do. Furthermore, all of plaintiff's attendant care providers were approved by the Commission.

**8. Workers' Compensation—interest—prior award—no out-of-pocket expenses**

The Industrial Commission erred in a worker's compensation case by concluding that plaintiff was not entitled to interest on a prior award for attendant care benefits. The legitimate legislative purposes of preventing unjust enrichment to defendant and promoting settlement are advanced by the award of interest, even where the worker has not shown out-of-pocket expenses during the appeal.

Judge BEASLEY concurring in part and dissenting in part.

Cross-appeals by defendants and plaintiff from Opinion and Award entered 7 March 2012 by the North Carolina Industrial Commission. Heard in the Court of Appeals 29 November 2012.

*The Hodgman Law Firm, PA by Heather Hodgman Jahnes and Robert S. Hodgman, for plaintiff-appellee/cross-appellant.*

*Hedrick Gardner Kincheloe & Garofalo, LLP by Vachelle D. Willis and M. Duane Jones, for defendants-appellants/cross-appellees.*

STROUD, Judge.

## I. Background

On 21 July 2003, Sheryl Boylan ("plaintiff") was injured while working for Verizon Wireless, which is insured by Sedgwick CMS ("defendants"). The facts surrounding plaintiff's injury and subsequent treatment are laid out in *Boylan v. Verizon Wireless*, 201 N.C. App. 81, 685 S.E.2d 155 (2009) (*"Boylan I"*), *disc. rev. denied*, 363 N.C. 853, 693 S.E.2d 918 (2010), and we will not repeat them here.

The only issues on appeal concern plaintiff's entitlement to attendant care, the details thereof, whether plaintiff is entitled to home modifications relating to her disability, and whether she is entitled to interest on her prior attendant care award.

On 23 April 2004, Misty Boylan, plaintiff's daughter, began taking care of her mother's daily needs, including cooking, cleaning, and other daily chores that plaintiff could not do on her own because of her compensable back injury. When Misty. Boylan moved away in October 2007, Regina and Nathan Locklear began providing plaintiff's attendant care. On 16 January 2008, the initial hearing in this matter was held before Deputy Commissioner Houser. A hearing was then held before the Full Commission, which, by Opinion and Award entered on 9 December 2008, awarded all of plaintiff's attendant care providers $8 per hour for past attendant care provided and stated that the Locklears were entitled to that same amount for ongoing attendant care provided to plaintiff. Defendants appealed on this issue, among others, to this Court and we affirmed the award of attendant care. *Boylan I*, 201 N.C. App. at 88, 685 S.E.2d at 160.

On 12 April 2009, Misty Boylan moved back into her mother's house and took over attendant care responsibilities from the Locklears. As the Commission had not provided for any future changes in attendant care providers, defendants did not pay Misty Boylan for her attendant care services. Plaintiff and defendants both filed a Form 33 requesting a hearing on this issue.

A hearing was held on 14 January 2011 before Deputy Commissioner Houser. The parties then appealed to the full Industrial Commission which entered its Opinion and Award on 7 March 2012. The Commission awarded plaintiff $8 per hour for eight hours per day for attendant care services provided before 12 April 2009 by Misty Boylan, and $10 per hour for eight hours per day for ongoing care, whether provided by Misty Boylan, the Locklears, or if they were

unable to provide care, a professional caregiver.[1] The Commission also awarded plaintiff modifications to her home at defendants' expense. The Commission denied plaintiff's request for interest on her attendant care award from 23 August 2004 to 12 April 2009. Defendant appeals from the award of attendant care and home modifications; plaintiff appeals from the denial of interest on the prior attendant care award.

## II. Standard of Review

> [R]eview of a decision of the Industrial Commission is limited to determining whether there is any competent evidence to support the findings of fact, and whether the findings of fact justify the conclusions of law. The findings of the Commission are conclusive on appeal when such competent evidence exists, even if there is plenary evidence for contrary findings. This court reviews the Commission's conclusions of law *de novo*.

*McLaughlin v. Staffing Solutions*, 206 N.C. App. 137, 143, 696 S.E.2d 839, 844 (2010) (citation and quotation marks omitted).

## III. Defendant's Appeal

Defendant appeals from the Award and Opinion of the Full Commission awarding plaintiff attendant care from 12 April 2009 onward and awarding plaintiff replacement wheelchair ramps for her home, claiming there was insufficient competent evidence to support the Commission's factual findings and that the factual findings did not support the conclusions of law.

A. Attendant Care

[1] This Court has previously addressed nearly the same question between these two parties. In *Boylan I*, this Court affirmed the Industrial Commission's 2008 Award and Opinion ordering defendants to pay for plaintiff's attendant care. In its October 2008 Award and Order, affirmed by this Court in *Boylan I*, the Industrial Commission found that attendant care, which had previously been performed by Misty Boylan, Regina Locklear, and Nathan Locklear, was medically beneficial. Because Misty Boylan had ceased providing care for her mother at the time of the 2008 award, the Full Commission only awarded her compensation for past attendant care services, while

---

1. The Commission found that the evidence indicated that a certified nursing assistant would cost approximately $20.28 per hour.

awarding past and ongoing attendant care compensation to the Locklears. On 19 October 2009, defendants filed a Form 33 Request for Hearing alleging that plaintiff's claim for attendant care has been "rendered moot by Defendant's modifications to plaintiff's home and Plaintiff's medical improvements." When the Locklears stopped providing attendant care to Mrs. Boylan, Misty Boylan resumed caring for her mother, but Defendants refused to compensate her for ongoing attendant care, as it had not been specifically addressed in the prior award.

[2] Defendants argue that there was no competent evidence to support the Commission's finding that plaintiff would "benefit medically" from Misty Boylan's attendant care. Defendants challenge findings of fact 21, 22, 24, 31, 32, and 33. Defendants do not challenge any other finding of fact and therefore they are binding on appeal. *Garner v. Capital Area Transit*, 208 N.C. App. 266, 271, 702 S.E.2d 319, 323 (2010). Defendants also assert that "the Commission failed to make the necessary findings of fact and conclusions of law as to whether Plaintiff's medical improvement from the spinal cord stimulator and home improvements nullified any medical need for the attendant care requested." For the following reasons, we hold that there was competent evidence to support the Commission's findings of fact and that the findings of fact justify the conclusions of law as to attendant care for plaintiff.

The Commission made the following relevant findings of fact[2]:

5. Plaintiff's back pain and other symptoms vary daily

. . . .

8. Regarding the activities of daily living, due to her physical disabilities plaintiff testified that she requires assistance while getting into the shower, dressing, ambulation, taking her medication, preparing meals, cleaning, doing laundry, and performing yard work. When not assisted by her family, plaintiff is unable to safely prepare food or meals. Also, plaintiff is currently

---

2. Many of the Commission's findings were not true findings of fact, but recitations of evidence or testimony. *See Lane v. American National Can Co.*, 181 N.C. App. 527, 531, 640 S.E.2d 732, 735 (2007) ("This Court has long held that findings of fact must be more than a mere summarization or recitation of the evidence and the Commission must resolve the conflicting testimony."), *disc. rev. denied*, 362 N.C. 236, 659 S.E.2d 735 (2008). Fortunately, there were also findings of fact that did not merely recite testimony.

unable to drive, and she requires assistance running errands, shopping, and filling her prescriptions.

. . . .

15. On April 12, 2009, Ms. Misty Boylan moved back into plaintiff's home and resumed the role of assisting plaintiff with the activities of daily living.

. . . .

32. Based on the preponderance of the evidence in view of the entire record, the Full Commission finds that plaintiff would benefit medically from ongoing attendant care services for eight (8) hours per day. Further, Ms. Misty Boylan is an appropriate person to provide future attendant care to plaintiff. The Full Commission finds that plaintiff would benefit medically from future services to be provided by Ms. Misty Boylan, including assisting plaintiff with: showering, including transferring into and out of the shower; dressing; cooking; cleaning her home and with laundry; transporting heavy or hot items; ambulating; and driving and shopping. For these ongoing services a reasonable rate of compensation for Ms. Misty Boylan is $10.00 per hour, an increase from the 2008 amount by $2.00 per hour.

The Commission then concluded:

3. . . . The Full Commission concludes as a matter of law that plaintiff is entitled to compensation for the attendant care services provided to her for eight (8) hours per day by Ms. Misty Boylan from April 12, 2009, through the date of this Opinion and Award. N.C. Gen. Stat. §§ 97-2(19); 97-25. For these services, plaintiff is entitled to have Ms. Misty Boylan paid by defendants $8.00 per hour. *Id.*

4. Plaintiff is entitled to ongoing attendant care services for eight (8) hours per day to be provided at the expense of defendants. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1. The Full Commission concludes that Ms. Misty Boylan is an appropriate person to provide these services, and plaintiff is entitled to have Ms. Misty Boylan paid by defendants $10.00 per hour. *Id.* If Ms. Misty Boylan stops providing attendant care to plaintiff and

Ms. Regina Locklear and/or Mr. Nathan Locklear resume caring for plaintiff, then plaintiff is entitled to have defendants pay the Locklears $10.00 per hour. *Id.* If plaintiff stops receiving care from Ms. Misty Boylan and stops receiving care from the Locklears, then plaintiff is entitled to eight (8) hours per day of attendant care to be provided by a professional caregiver. *Id.*

Much relevant testimony was given by Ms. Weiss, a certified life care planner and registered nurse. Defendants contend that Ms. Weiss's testimony was not competent evidence because they objected to her tender as an expert in the field of life care planning. The Industrial Commission never ruled on defendants' objection. On appeal, defendants only state that Ms. Weiss's testimony is inadmissible because they objected and the Commission did not find that Ms. Weiss was an expert.

Even assuming that Ms. Weiss's testimony was improperly admitted, defendants have failed to preserve this issue for our review.

In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for *the complaining party* to obtain a ruling upon the party's request, objection, or motion.

N.C.R. App. P. 10(a)(1) (emphasis added). It was defendants' duty to obtain a ruling on their objection to Ms. Weiss's qualifications. Because defendants failed to do so this issue is not preserved for our review.

Ms. Weiss observed plaintiff in her home, including how Misty Boylan assisted plaintiff, and considered the medical reports from plaintiff's treating physicians. Ms. Weiss watched as plaintiff attempted to navigate a daily routine, including entering and exiting the shower, sitting in bed, loading and unloading her washing machine, and other daily chores. Ms. Weiss stated that plaintiff suffered from several problems which limit her ability to function in the home and that plaintiff's physical limitations presented a high risk of falling. She therefore concluded that plaintiff required eight to nine hours of assistance in daily functioning, much of which "is for supervisory care for safety."

Ms. Weiss' testimony was corroborated by that of Cheryl Yates, an occupational nurse, and the report filed by Melissa Fuller, an Occupational Therapist. Ms. Yates testified that plaintiff had difficulty walking and could not get into or out of the bathtub without assistance. Ms. Fuller observed that plaintiff had difficulty navigating the bathtub and her kitchen safely or doing her laundry without assistance.

Defendants argue that this evidence is insufficient to support the Commission's finding that plaintiff would medically benefit from attendant care because Dr. Rauck disagreed with Ms. Weiss's assessment and because she did not consult the other doctors in preparing her report. Determining credibility and weight to be given to conflicting testimony is solely the responsibility of the Commission, not this Court. *Rawls v. Yellow Roadway Corp.*, ___ N.C. App. ___, ___, 723 S.E.2d 573, 578 (2012). We hold that the above competent evidence supports the Commission's finding that plaintiff would medically benefit from attendant care and that such a finding justifies the Commission's conclusion awarding plaintiff costs of attendant care.

**[3]** Defendants also contend that the Industrial Commission failed to make findings as to "whether Plaintiff's medical improvement from the spinal cord stimulator and home improvements nullified any medical need for the attendant care requested."

> The Full Commission must make definitive findings to determine the critical issues raised by the evidence, and in doing so must indicate in its findings that it has "considered or weighed" all testimony with respect to the critical issues in the case. It is not, however, necessary that the Full Commission make exhaustive findings as to each statement made by any given witness or make findings rejecting specific evidence that may be contrary to the evidence accepted by the Full Commission. . . . Such "negative" findings are not required.

*Bryant v. Weyerhaeuser Co.*, 130 N.C. App. 135, 139, 502 S.E.2d 58, 61-62 (citations and quotation marks omitted), *disc. rev. denied*, 349 N.C. 228, 515 S.E.2d 58 (1998).

While it is true that the Commission did not make any specific findings of fact as to how effective the spinal cord stimulator treatment has been, the Commission made those findings of fact necessary to support its conclusions as to attendant care. The Commission noted in Finding 4 that the spinal cord stimulator had been implanted by Dr. Rauck in July 2009, but also made the findings noted above

regarding Ms. Boylan's abilities and need for care after this treatment. By finding that Mrs. Boylan medically benefitted from attendant care, the Commission necessarily dismissed the idea that any medical improvement from the spinal cord stimulator was substantial enough to eliminate the medical benefits of attendant care. The Commission was not required to make specific findings as to an absence of medical improvements from the spinal cord stimulator. *See id.* Even if Mrs. Boylan suffers less pain because of the spinal cord stimulator or if she was able to reduce the amounts of pain medications, the relevant question is still whether she would benefit medically from attendant care. Ms. Weiss testified that even if plaintiff's pain were completely gone, she would still require substantial attendant care. The Commission clearly credited Ms. Weiss's testimony and found that plaintiff would benefit medically from attendant care. As we held above, that finding is supported by competent evidence.

**[4]** Defendants next challenge the Commission's finding that plaintiff would benefit medically from eight hours of attendant care per day. There was testimony from Ms. Weiss that plaintiff required eight to nine hours of attendant care per day to assist her in daily activities such as cleaning, cooking, and bathing, as well as to lessen her risk of falling and suffering greater injury. Although Ms. Weiss indicated that it might be possible to reduce the number of hours, she stated that doing so might endanger plaintiff. She recommended a bare minimum of six to eight hours of attendant care per day, even ignoring plaintiff's pain issues. This competent evidence supports the Commission's finding that eight hours of attendant care would be medically beneficial to plaintiff, so that finding is conclusive on appeal. *McLaughlin,* 206 N.C. App. at 143, 696 S.E.2d at 844. The fact that evidence to the contrary was also presented to the Commission does not change our conclusion. The Commission's finding that plaintiff would benefit medically from eight hours of attendant care, in turn, supports the Commission's conclusion awarding eight hours of attendant care per day.

**[5]** Defendants also argue that the Commission's findings on the compensation rate for plaintiff's attendant care was not supported by competent evidence. The Commission found that "a reasonable rate of compensation for Misty Boylan is $10.00 per hour, an increase from the 2008 amount by $2.00 per hour." Ms. Weiss testified that she determined that hiring a private assistant to help plaintiff with her daily activities would cost on average about $20 per day by looking at the prices for two companies who provide the type of care plaintiff would

require if her daughter were not available to help. Defendants contend that this testimony does not support a finding that Misty Boylan, plaintiff's daughter and caregiver, should be paid $10 per hour for her attendant care services because Ms. Boylan is not a professional. There was no evidence on the compensation rate for unskilled nursing care.

We confronted the same argument in *Chandler ex rel. Harris v. Atlantic Scrap & Processing*, ___ N.C. App. ___, 720 S.E.2d 745 (2011), *disc. rev. granted*, ___ N.C. ___, 731 S.E.2d 141 (2012). In that case, we held that there was competent evidence to support a finding that $11 per hour was a reasonable compensation rate for a husband providing unskilled attendant care for his wife when the evidence before the Commission indicated that the compensation rate for professional attendant care was between $10 and $20 per hour. *Chandler*, ___ N.C. App. at ___, 720 S.E.2d at 752-53. In *Chandler*, as here, the attendant caregiver was an unskilled family member and the evidence before the court only addressed the compensation rate for the kind of skilled assistant that would be needed to replace the family member.

Thus, as in *Chandler*, we hold that the above evidence was competent and supports the Commission's finding that $10 per hour was a reasonable compensation rate for Misty Boylan, even though the evidence only addressed compensation rates for professional caregivers. Further, this finding justifies the Commission's conclusion awarding Misty Boylan $10 per hour for her attendant care services.

B. Replacement of Wheelchair Ramps

[6] Defendants further argue that the Commission erred in concluding that plaintiff is entitled to replacement of her wheelchair ramps because the evidence fails to show that plaintiff needs a wheelchair and both physician witnesses did not recommend repairs to the wheelchair ramp. Both Ms. Weiss and Ms. Yates testified to plaintiff's mobility limitations. Ms. Fuller, plaintiff's occupational therapist, recommended fixing plaintiff's rear ramp, extending the front ramp, and recommended a wheelchair-accessible pantry. Ms. Weiss, Ms. Yates, and Ms. Fuller all indicated that plaintiff benefitted from the use of a rolling walker to get around. Further, Ms. Weiss explicitly recommended fixing the ramps because they present safety hazards in their current condition.

Again, defendants' arguments concerning contrary medical opinions are unavailing. The above evidence was competent and supports

the Commission's finding that plaintiff's wheelchair ramps should be replaced and the front ramp extended. Those findings justify the Commission's conclusion ordering defendants to pay for replacement wheelchair ramps and an extension of plaintiff's front wheelchair ramp.

C. Commission's Failure to Allow Defendants to Choose Plaintiff's Attendant Caregiver

[7] Defendants lastly argue that the Industrial Commission erred in not allowing defendants to choose plaintiff's attendant care provider.

The case cited by defendants, *Kanipe v. Lane Upholstery*, 141 N.C. App. 620, 540 S.E.2d 785 (2000), disposes of their argument on this point. In *Kanipe*, we observed that the employer had the right to direct the employee's treatment and choose the medical provider where the employer has accepted liability and promptly and adequately directed the employee to a provider of their choosing. *Kanipe*, 141 N.C. App. at 624-26, 540 S.E.2d at 788-89. Even if we assume that the selection of a surgeon is sufficiently similar to the selection of an attendant care provider, there is absolutely no evidence that defendants directed plaintiff to their chosen attendant care provider "in a prompt and adequate manner." *Id.* at 626, 540 S.E.2d at 789. Instead, defendants have done just the opposite by resisting plaintiff's claims for attendant care at every step, even after the Commission's first award of attendant care, this Court's affirmance of the award, and the Supreme Court's denial of discretionary review. In fact, Ms. Boylan has required attendant care, as noted in *Boylan I*, since 23 August 2004, *Boylan I*, 201 N.C. App. at 88, 685 S.E.2d at 160, but defendant has yet to direct her to any attendant care provider. Further, "even in the absence of an emergency or the employer's failure to direct timely and adequate treatment, an employee still may select his or her own physician if such selection is approved by the Commission." *Kanipe*, 141 N.C. App. at 626, 540 S.E.2d at 789. All of plaintiff's attendant care providers have been approved by the Commission—in both the 2008 Opinion and Award and the 2011 Opinion and Award. Therefore, defendants' argument on this point is without merit.[3]

---

3. The record before us does not reveal why defendant would prefer to pay over twice as much for a professional caregiver instead of paying one of plaintiff's family members $10 per hour.

D. Conclusion

We hold that there was competent evidence to support all of the Commission's challenged findings regarding plaintiff's attendant care and house modifications and that those findings support the Commission's conclusions of law as to those issues. We therefore affirm the Industrial Commission's 2011 Order and Award granting plaintiff continuing attendant care and the repair and extension of plaintiff's wheelchair ramps at defendants' expense.

IV. Plaintiff's Appeal

[8] Plaintiff cross-appeals from the Commission's Award and Opinion, arguing that the Commission erred in failing to award her interest on the portion of her attendant care award from 23 August 2004 until 12 April 2009. Plaintiffs challenge the Commission's findings of fact and conclusions of law on this issue.[4] Defendants counter that plaintiff is not entitled to interest because she had no out-of-pocket expenses and awarding interest here would act only as a punishment for appeal and serve no compensatory purpose. For the following reasons, we hold that the Commission's conclusion of law was erroneous because it required plaintiff to show out-of-pocket expenses or prejudice.

The Commission made the following relevant finding of fact:

38. There is no evidence that plaintiff suffered loss of use, out of pocket expenses, or other disadvantage by defendants' appeal, and the resulting delay in payment, of the Full Commission's December 9, 2008 award of attendant care benefits from August 23, 2004 to April 12, 2009. Accordingly, the Full Commission finds that there is not a compensatory purpose in awarding interest to plaintiff on attendant care provided to her during this time period.

The Commission then concluded:

9. The Industrial Commission may require a defendant to pay interest on a plaintiff's outstanding medical expenses. *Childress v. Trion, Inc.*, 125 N.C. App. 588, 590-92, 481 S.E.2d 697, 698-99, *disc. review denied*, 346

---

4. Plaintiff does not challenge the Commission's denial of interest for the period between April 12, 2009 and the 2011 Opinion and Award because the language of the 2008 Opinion and Award specified that plaintiff was entitled to attendant care by the Locklears, but failed to mention ongoing attendant care by Misty Boylan.

N.C. 276, 487 S.E.2d 541 (1997); N.C. Gen. Stat. §97-86.2 However, absent a compensatory purpose, an award of interest under N.C. Gen. Stat. § 97-86.2 creates a penalty for employers and carriers, and ignores the overall purpose of the Worker's Compensation Act. *Sprinkle v. Lilly Industries, Inc.*, 193 N.C. App. 694, 699, 668 S.E.2d 378 (2008) *review denied*, 363 N.C. 130, 673 S.E.2d 363 (2009). The compensatory purpose of an interest award seeks to compensate an employee for loss of the use of a damage award or for disadvantage caused by the delay in payment. *Childress*, 125 N.C. App. at 592, 481 S.E.2d at 699. Here, there is no evidence that plaintiff suffered loss of use, out of pocket expenses, or other disadvantage by defendants' appeal of the Full Commission's December 9, 2008 award of attendant care benefits from August 23, 2004 to April 12, 2009. Therefore, there is no evidence of a compensatory purpose to awarding interest on attendant care provided to plaintiff during this time period. As there is no compensatory purpose to support an award of interest, the Full Commission concludes as a matter of law that plaintiff is not entitled to interest on attendant care benefits provided to her from August 23, 2004 to April 12, 2009.

Interest awards in this context are governed by N.C. Gen. Stat. § 97-86.2. The statute unambiguously states:

In any workers' compensation case in which an order is issued either granting or denying an award to the employee and where there is an appeal resulting in an ultimate award to the employee, the insurance carrier or employer *shall pay interest on the final award or unpaid portion thereof* from the date of the initial hearing on the claim, until paid at the legal rate of interest provided in G.S. 24-1. If interest is paid it shall not be part of, or in any way increase attorneys' fees, but shall be paid in full to the claimant.

N.C. Gen. Stat. § 97-86.2 (2011) (emphasis added).

It is well established that the word "shall" is generally imperative or mandatory. Thus, the statutory language of N.C. Gen. Stat. § 97–86.2 confers no "degree of discretion" on the Commission in determining an interest

BOYLAN v. VERIZON WIRELESS

[224 N.C. App. 436 (2012)]

award given the presence of the circumstances delineated in the relevant statutory language.

*Chandler,* ___ N.C. App. at ___, 720 S.E.2d at 750 (citations and quotation marks omitted). This Court has held that the statutory mandate applies to attendant care services provided by family members who have not been paid during an appeal. *Id.* Of course, "[w]here a literal reading of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." *Taylor v. Crisp,* 286 N.C. 488, 496, 212 S.E.2d 381, 386 (1975) (citation and quotation marks omitted).

The purposes of awarding interest are: "(a) To compensate a plaintiff for loss of the use value of a damage award or compensation for delay in payment; (b) to prevent unjust enrichment to a defendant for the use value of the money, and (c) to promote settlement." *Chandler,* ___ N.C. App. at ___, 720 S.E.2d at 750 (quoting *Powe v. Odell,* 312 N.C. 410, 413, 322 S.E.2d 762, 764 (1984)) (brackets omitted).

Defendants and the Commission misunderstand the role these statutory purposes have played in our decisions. Defendants, citing *Childress v. Trion, Inc.,* 125 N.C. App. 588, 481 S.E.2d 697 (1997), and *Sprinkle v. Lilly Industries, Inc.,* 193 N.C. App. 694, 668 S.E.2d 378 (2008), argue that plaintiff is not entitled to interest because she suffered no prejudice from the appeal, such as out-of-pocket expenses, and that awarding interest would only serve an improper punitive purpose.

In *Childress,* we confronted the question of whether medical expenses are covered by § 97-86.2, or whether interest may only be paid on compensation due to a worker. *Childress,* 125 N.C. App. at 590, 481 S.E.2d at 698. We held that medical expenses were included in the interest calculation, despite the fact that "it was the medical providers who provided the treatment and who waited for the resolution of this matter to receive their funds, not the plaintiff." *Id.* at 591, 481 S.E.2d at 699. Indeed, we stated that "any award of medical compensation for the plaintiff's benefit is covered by G.S. 97-86.2." *Id.*

Defendants point to our reasoning in *Childress* as implying that absent out-of-pocket expenses or other prejudice, an interest award only serves as a windfall to plaintiffs. Although we did highlight the myriad difficulties that plaintiffs face, including out-of-pocket expenses while awaiting resolution of their claim, we also noted other rationales for awarding interest, including "to prevent unjust

enrichment to a defendant for the use value of the money" and "to promote settlement." *Id.* at 591-92.

Both of these legitimate legislative purposes are advanced by the award of interest to a worker, even where the worker has not shown out-of-pocket expenses during the appeal. An award of interest prevents a windfall to defendants who continue to benefit from the use value of the money that they owe plaintiffs by using or investing the funds during the pendency of an appeal. Without an award of interest, "carriers, through frivolous appeals, could temporarily deprive injured employees of awards while retaining the earnings thereon." *Suggs v. Kelley Springfield Tire Co.*, 71 N.C. App. 428, 431, 322 S.E.2d 441, 443 (1984).[5] Delay may further be incentivized by the fact that "he who pays $1.00 tomorrow to discharge a debt of $1.00 due and payable today, pays less than he owes." *Lea Co. v. North Carolina Bd. Of Transp.*, 317 N.C. 254, 260, 345 S.E.2d 355, 358 (1986) (citation and quotation marks omitted). These incentives are lessened by a requirement that defendants pay interest on unpaid medical expenses, even where the plaintiff has not paid anything out of pocket. By removing such incentives, the legislature is not punishing defendants, but promoting settlement by depriving defendants of the financial advantage of delay if the worker is actually entitled to an award. *See Childress*, 125 N.C. App. at 591, 481 S.E.2d at 699.

Our opinion in *Sprinkle* concerned "only whether the calculation of interest on an unpaid award should include *amounts of the award which were reimbursed to the third-party health insurer.*" *Sprinkle,* 193 N.C. App. at 699, 668 S.E.2d at 381 (emphasis in original). We were presented with a situation where the provider and the plaintiff had both been compensated. *Id.* at 698-99. Only the plaintiff's third-party insurer had yet to receive its part of the award for having covered the plaintiff's expenses. *Id.* at 699. We held that "the language 'final award or unpaid portion thereof,' N.C. Gen. Stat. § 97-86.2, must not include amounts of medical compensation for which plaintiff was indemnified by his health insurer and which were reimbursable to the third-party health insurer." *Id.* at 701, 668 S.E.2d at 383.

This Court reasoned that to award a plaintiff interest after he has already been compensated by a third-party insurer is to provide a windfall and therefore serves only to punish defendants for appealing, contrary to the statutory purposes. *Id.* We observed that the med-

---

5. This reasoning explains a purpose of the statute, in response to defendants' argument as to proper purpose, but it is not required that the plaintiff show that in her particular case the defendant actually profited from use of the funds.

ical provider had been paid by the plaintiff's major medical insurance, thus "interest awards on amounts reimbursed to a third-party health insurer are not for plaintiff's benefit." *Id.* at 696, 701, 668 S.E.2d at 379-80, 382.

Here, by contrast, the attendant care provider had not been compensated at all during the appeal. Rather, like the providers in *Childress*, Misty Boylan "provided the treatment and . . . waited for the resolution of this matter to receive [her] funds[.]" *Childress*, 125 N.C. App. at 591, 481 S.E.2d at 699. In both *Sprinkle* and *Childress*, the statutory purposes of awarding interest were used as interpretive guides to determine what is included in the "final award or unpaid portion" from which interest is calculated. In neither case did we require plaintiffs to show prejudice to receive interest on otherwise compensable unpaid medical expenses.

The statute "confers no degree of discretion on the Commission in determining an interest award given the presence of the circumstances delineated in the relevant statutory language." *Chandler*, ___ N.C. App. at ___, 720 S.E.2d at 750 (citations and quotation marks omitted). There is no dispute that plaintiff was awarded attendant care, that defendants appealed and that this Court affirmed the Commission's award. Therefore, § 97-86.2 applies. There is no evidence that plaintiff has been compensated or indemnified by a third party insurer in a manner that would make this case comparable to *Sprinkle*. Thus, here, unlike in *Sprinkle*, the award is for the plaintiff's benefit and the plain language of § 97-86.2 requires an award of interest. Further, doing so does not run contrary to the purposes of the statute.[6]

We hold that the Commission erred in concluding that plaintiff was not entitled to interest on the 9 December 2008 award of attendant care benefits from 23 August 2004 to 12 April 2009. Accordingly, we reverse the Commission's 2011 Opinion and Award in part and remand for the Commission to make conclusions of law and an award consistent with this opinion.

---

6. Even assuming such a finding was supported by evidence, the Commission's finding that plaintiff suffered no additional loss, out-of-pocket expense, or other disadvantage is immaterial as the Commission committed an error of law by requiring plaintiff to show such prejudice from defendants' appeal. Therefore, we do not address plaintiff's challenges to the Commission's findings.

V. Conclusion

In summary, we affirm all of the findings and conclusions made by the Industrial Commission as to plaintiff's entitlement to attendant care, the amount and compensation rate thereof, as well as to modifications to her wheelchair ramps. We reverse the Commission's conclusion that plaintiff is not entitled to interest on the amount of her attendant care services between 23 August 2004 and 12 April 2009 and remand to the Commission to determine the proper amount of interest to which plaintiff is entitled under N.C. Gen. Stat. § 97-86.2.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

Judge HUNTER, Jr., Robert N. concurs.

Judge BEASLEY concurs in part and dissents in part by separate opinion.

BEASLEY, Judge concurring in part and dissenting in part.

I respectfully dissent from the majority's opinion affirming the increase in pay for attendant care and reversing the Commission's denial of interest on Plaintiff's award. I would reverse the increase in pay for attendant care.

This Court employs

> a flexible case-by-case approach in which the Commission may determine the reasonableness and medical necessity of particular attendant care services by reviewing a variety of evidence, including but not limited to the following: a prescription or report of a healthcare provider; the testimony or a statement of a physician, nurse, or life care planner; the testimony of the claimant or the claimant's family member; or the very nature of the injury.

*Shackleton v. S. Flooring & Acoustical Co.*, ___ N.C. App. ___, ___, 712 S.E.2d 289, 301 (2011)(footnotes omitted). *Chandler v. Atlantic Scrap & Processing*, ___ N.C. App. ___, ___, 720 S.E.2d 745, 752 (2011), *disc. review allowed*, ___ N.C. ___, 731 S.E.2d 141 (2012), cited by the majority, is easily distinguishable because the Commission was presented with testimony about the rate paid to an unskilled attendant. *Levens v. Guilford County Schools*, 152 N.C. App. 390, 396-97, 567 S.E.2d 767, 771-72 (2002), is also distinguish-

BOYLAN v. VERIZON WIRELESS

[224 N.C. App. 436 (2012)]

able. In *Levens*, the medical case manager testified that a home health attendant usually was paid anywhere between $8.50 to $10/hour, though the home health agencies usually charged an insurance company more for their employees' services (up to $15). *Id. Palmer v. Jackson*, 161 N.C. App. 642, 590 S.E.2d 275 (2003), cited by Plaintiff, is distinguishable as well. In *Palmer*, a doctor from Mexico testified as to the reasonable rate of compensation for the comatose claimant in his rural home in Mexico, accounting for the claimant's condition, the condition of his home, and the distance the attendant would have to travel. *Id.* at 647, 590 S.E.2d at 278.

The majority concludes that the Commission did not err in awarding $10/hour for attendant care. I believe the Commission erred because there is no evidence supporting an increase in the hourly rate from $8/hour to $10/hour. The only evidence regarding the pay for an attendant is Ms. Weiss' testimony that a certified nursing assistant, a skilled attendant, would be paid $20.28/hour. Finding of Fact #32, without any support, states that "[f]or these ongoing services, a reasonable rate of compensation for Ms. Misty Boylan is $10.00 per hour, an increase from the 2008 amount by $2.00 per hour." Rp 52. The majority analogizes this case to *Chandler*, but neglects to note that the testimony in *Chandler* was for an *unskilled* attendant's rate whereas the testimony in this case was about a *skilled* attendant's rate when it is undisputed that Misty Boylan is not a skilled attendant. Though Plaintiff points to other cases where this Court has upheld rates of $10-$11/hour, the standard for awarding attendant care is explicitly on a case-by-case, flexible basis. Thus, I believe the payment rate is also to be determined on a case-by-case, flexible basis. The rates awarded in another case cannot simply be cut and pasted into this case. Neither can the Commission simply decide that cutting the skilled attendant's pay rate in half is appropriate for an unskilled attendant's pay rate. Thus, I would reverse the increase in attendant pay as it is unsupported by the competent evidence before the Commission.