GERALD T. LANE, Employee, Plaintiff v. AMERICAN NATIONAL CAN COMPANY, Employer, SELF-INSURED (GALLAGHER BASSETT SERVICES, INC., Servicing Agent), Defendants

No. COA06-87

(Filed 6 February 2007)

**1. Workers' Compensation— occupational disease—failure to make necessary findings—greater risk of contracting psychological condition**

The Industrial Commission erred in a workers' compensation case by concluding that plaintiff did not suffer a compensable occupational disease due to his employment, and the case is remanded for entry of necessary findings, because: (1) work-related depression or other mental illness may qualify as a compensable occupational disease under appropriate circumstances; and (2) the Commission failed to make any finding of fact resolving the conflicting testimony as to whether plaintiff was placed at a greater risk for contracting his psychological condition than the general public.

**2. Workers' Compensation— expert testimony—methodology—credibility**

The Industrial Commission did not abuse its discretion in a workers' compensation case by admitting the opinion of a psychiatrist that was allegedly not based on scientific, technical, or otherwise specialized knowledge, because: (1) plaintiff's contentions on appeal only challenge the methodology of the expert's opinion which goes to the weight of her testimony and not the admissibility; and (2) North Carolina does not apply the gatekeeping function articulated by *Daubert*, 509 U.S. 579 (1993), but instead leaves the duty of weighing the credibility of the expert testimony to the trier of fact.

**3. Workers' Compensation— failure to rule on discovery motions—implicit ruling**

The Industrial Commission did not err in a workers' compensation case by allegedly failing to rule on certain discovery motions brought against plaintiff because, although the Commission's ruling was not as explicit as desired, an implicit ruling was made on the motions brought forward on appeal to the Commission.

LANE v. AMERICAN NAT'L CAN CO.

[181 N.C. App. 527 (2007)]

Appeal by plaintiff and defendants from an opinion and award filed 6 October 2005 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 October 2006.

*Elliot Pishko Morgan, PA, by J. Griffin Morgan, for plaintiff appellant-appellee.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by George H. Pender, for defendant appellants-appellees.*

McCULLOUGH, Judge.

Plaintiff appeals from an opinion and award of the North Carolina Industrial Commission ("the Commission") denying workers' compensation benefits to Gerald Lane ("plaintiff") based on the finding that plaintiff did not develop an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with defendant American National Can Company ("ANC") and which excluded all ordinary diseases of life to which the general public was equally exposed. Defendants appeal from the opinion and award of the Commission on the grounds that the Commission failed to address certain motions brought forward by defendants and asks that this Court remand for a further determination of those issues. For the reasons that follow, we remand for the Commission to make additional findings of fact.

On 1 June 2000, plaintiff filed a notice of accident to his employer, defendant ANC, alerting the company that he contracted an occupational disease, "major depression, emotional and mental disability" due to "severe and extreme work related stress and pressure" on 18 March 1999. ANC denied plaintiff's claim and the case came for hearing before the Commission on 14 October 2003.

The relevant facts found by the Commission are as follows: Plaintiff began working for the company, now known as ANC, in 1975. He began as an operator of a can production machine, was promoted to line supervisor and eventually to Assistant Production Manager. Plaintiff maintained his position as Assistant Production Manager until the early 90's when ANC purchased the company and began to downsize. At the time of downsize, plaintiff was offered and accepted his former position as a line supervisor which he remained in until 18 March 1999.

Plaintiff testified that ANC continued to downsize causing him to work harder, be more productive with less help and incur changes in

the manner in which he performed his job resulting in increased levels of stress and increased job duties. Plaintiff sought psychiatric help in March 1999 from Dr. McCauley in which plaintiff noted: "I am stressed from my job, from the physical and mental demands from the new owners, which have been getting worse for the past eight to ten months. As a result, I hate my peers and I feel like bashing them with arguments and I cannot forget what's been happening for more than a year."

Dr. Artigues, an expert witness board certified in general and forensic psychiatry, testified that she could not render an opinion that plaintiff was suffering from depression based on the symptoms he exhibited during her evaluation. She further testified that the job stressors and duties identified by plaintiff were not characteristic of and peculiar to his employment with ANC. She based her opinions on her experience as a clinical psychiatrist who treats patients with job-related stress issues. Dr. Artigues further opined that plaintiff was not at a greater risk of developing psychiatric issues when compared to the general public as plaintiff's situation could happen in any occupation.

Other experts, Dr. Noble, Dr. Elliott and Dr. McCauley, testified on behalf of plaintiff opining that he was depressed and that his working conditions were a causal factor in plaintiff's developing such depression. Dr. Noble further stated that plaintiff's job placed him at a greater risk of suffering from depression than members of the general public based on the model theory of high demand and low discretion.

The Commission then found:

There is no competent evidence in the record to establish that plaintiff's working conditions at ANC exposed him to unique or peculiar job stressors to which the general public is not exposed. The greater weight of the evidence is that the job stressors plaintiff experienced at ANC can occur in any profession or industry. The working conditions which brought on plaintiff's increased level of stress are not characteristic of and peculiar to his line management supervisor position with ANC because these working conditions can occur in any industry, trade or profession.

The Commission concluded that plaintiff's psychological conditions were not due to causes and conditions characteristic of and peculiar to plaintiff's employment, that it was an ordinary disease of life and

LANE v. AMERICAN NAT'L CAN CO.

[181 N.C. App. 527 (2007)]

therefore not an occupational disease. The Commission then concluded that plaintiff's benefits should be denied. Mr. Lane appeals and ANC cross-appeals.

**[1]** Plaintiff contends on appeal that the Commission erred in concluding that plaintiff did not suffer a compensable occupational disease due to his employment.

The standard of review for an opinion and award of the North Carolina Industrial Commission is "(1) whether any competent evidence in the record supports the Commission's findings of fact, and (2) whether such findings of fact support the Commission's conclusions of law." *Creel v. Town of Dover*, 126 N.C. App. 547, 552, 486 S.E.2d 478, 480 (1997). "The Commission's findings of fact are conclusive on appeal if supported by competent evidence, notwithstanding evidence that might support a contrary finding." *Hobbs v. Clean Control Corp.*, 154 N.C. App. 433, 435, 571 S.E.2d 860, 862 (2002). In determining the facts of a particular case, "[t]he Commission is the sole judge of the credibility of the witnesses and the weight accorded to their testimony." *Effingham v. Kroger Co.*, 149 N.C. App. 105, 109-10, 561 S.E.2d 287, 291 (2002). "This Court reviews the Commission's conclusions of law de novo." *Deseth v. LensCrafters, Inc.*, 160 N.C. App. 180, 184, 585 S.E.2d 264, 267 (2003).

It is well established that work-related depression or other mental illness may qualify as a compensable occupational disease under appropriate circumstances. *See, e.g., Smith-Price v. Charter Pines Behavioral Ctr.*, 160 N.C. App. 161, 171, 584 S.E.2d 881, 888 (2003) (affirming award of benefits to a registered nurse who suffered from post-traumatic stress disorder); *Jordan v. Central Piedmont Community College*, 124 N.C. App. 112, 117, 476 S.E.2d 410, 413 (1996) (stating that case law "recognized depression, a mental condition, as an occupational disease and compensable under the [Workers' Compensation] Act"), *disc. review denied*, 345 N.C. 753, 485 S.E.2d 53 (1997); *Pulley v. City of Durham*, 121 N.C. App. 688, 694, 468 S.E.2d 506, 510 (1996) (affirming an award of benefits to a police officer who developed post-traumatic stress disorder and depression). The claimant must first establish, however, that "the mental illness or injury was due to stresses or conditions different from those borne by the general public." *Pitillo v. N.C. Dep't of Envtl. Health & Natural Res.*, 151 N.C. App. 641, 648, 566 S.E.2d 807, 813 (2002).

In order to prove that an employee has an occupational disease, the employee has the burden of proving three elements:

"(1) the disease is characteristic of and peculiar to persons engaged in a particular trade or occupation in which the plaintiff is engaged; (2) 'the disease is not an ordinary disease of life to which the public is equally exposed;' and (3) there is a causal connection between the disease and the plaintiff's employment."

*Id.* at 648, 566 S.E.2d at 812-13 (citations omitted). Our Supreme Court explained in *Rutledge*:

To satisfy the first and second elements it is not necessary that the disease originate exclusively from or be unique to the particular trade or occupation in question. . . . Only such ordinary diseases of life to which the general public is exposed equally with workers in the particular trade or occupation are excluded.

*Rutledge v. Tultex Corp.*, 308 N.C. 85, 93-94, 301 S.E.2d 359, 365 (1983).

Our Supreme Court has stated that these elements are met "if, as a matter of fact, the employment exposed the worker to a greater risk of contracting the disease than the public generally." *Id.* at 93-94, 301 S.E.2d at 365. In the instant case there were several findings of fact reciting conflicting expert testimony as to whether plaintiff's workplace stressors and employment places him at a greater risk for contracting depression than the public in general. Additionally, the Commission concluded that plaintiff's "psychological condition is an ordinary disease of life to which the general public, not so employed, is equally exposed." However, the Commission failed to make any finding of fact resolving the conflicting testimony as to whether plaintiff was placed at a greater risk for contracting his psychological condition than the general public.

This Court has long held that findings of fact must be more than a mere summarization or recitation of the evidence and the Commission must resolve the conflicting testimony. *Hansel v. Sherman Textiles*, 304 N.C. 44, 59, 283 S.E.2d 101, 109 (1981); *In re Rogers*, 297 N.C. 48, 56, 253 S.E.2d 912, 917-18 (1979); and *Thomason v. Cab Co.*, 235 N.C. 602, 605-06, 70 S.E.2d 706, 708-09 (1952);. The findings of fact contained in the opinion and award of the Commission fail to include a definitive determination as to whether plaintiff was placed at a greater risk for contracting the psychological condition than the general public equally exposed, and therefore the case must be remanded for entry of such necessary findings.

**[2]** Plaintiff further contends that the Commission erred in admitting the opinion of Dr. Artigues where it was not based on scientific, technical, or otherwise specialized knowledge. We disagree.

It appears that our courts have never decided whether the standard for admissibility of expert testimony set forth in *Goode* and *Howerton* applies in the workers' compensation context. However, even assuming *arguendo*, without deciding that the *Goode* and *Howerton* standard applies, Dr. Artigues' testimony was sufficiently reliable.

It is well established that trial courts must decide preliminary questions concerning the qualifications of experts to testify or the admissibility of expert testimony. N.C. Gen. Stat. § 8C-1, Rule 104(a) (2005). Trial courts are afforded "wide latitude of discretion when making a determination about the admissibility of expert testimony." *State v. Bullard*, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984). Where such latitude has been vested within the trial court, it follows that a ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004). A trial court abuses its discretion only when its ruling is "manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998).

The admissibility of expert testimony is also governed by Rule 702 of the North Carolina Rules of Evidence, which states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion. .

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2005). The Supreme Court of North Carolina in *State v. Goode*, 341 N.C. 513, 461 S.E.2d 631 (1995), set out a three-part analysis for determining whether to permit expert testimony. The first step evaluates whether the expert's method of proof is sufficiently reliable as an area for expert testimony. *Id.* at 527, 461 S.E.2d at 639. The second step determines whether the witness testifying at trial is qualified as an expert in that area of testimony. *Id.* at 529, 461 S.E.2d at 640. Finally, the court

must ask whether the expert's testimony is relevant. *Id.* at 529, 461 S.E.2d at 641.

Dr. Artigues was tendered as an expert in the fields of clinical and forensic psychiatry. She stated, in her opinion, that plaintiff did not exhibit any conditions that met the criteria for a psychiatric diagnosis. She further opined that the job stressors identified by plaintiff were not unique or peculiar to his employment at ANC but rather could occur in any workplace. Dr. Artigues proffered testimony showing that in forming her opinions she relied on articles and publications routinely relied on in the medical practice and her treatment of approximately 100 patients with work-related stress issues.

A review of the records and briefs clearly shows that plaintiff's contentions on appeal only challenge the methodology of Dr. Artigues' opinion which goes to the weight of her testimony and not the admissibility, and this Court will not address such issues. *Howerton,* 358 N.C. at 461, 597 S.E.2d at 688 (holding that once an expert has passed Rule 702's threshold of admissibility, "lingering questions or controversy concerning the quality of the expert's conclusions go to the weight of the testimony rather than its admissibility"). Our Supreme Court clearly stated in *Howerton* that North Carolina does not apply the gatekeeping function articulated by *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 125 L. Ed. 2d 469 (1993), but rather leaves the duty of weighing the credibility of the expert testimony to the trier of fact. *See id.* This assignment of error is overruled.

**[3]** Defendant contends by way of cross-appeal that the Commission erred in failing to rule on certain discovery motions brought against plaintiff. We disagree.

" '[W]hen [a] matter is "appealed" to the full Commission . . . , it is the duty and responsibility of the full Commission to decide all of the matters in controversy between the parties.' " *Cialino v. Wal-Mart Stores,* 156 N.C. App. 463, 474, 577 S.E.2d 345, 353 (2003) (citation omitted).

The Commission noted in its opinion and award that, "[t]he appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award." While this ruling by the Commission is not as explicit as desired, it appears that an implicit ruling has been made on the motions brought forward on appeal to

the Commission, and therefore it is unnecessary to remand the case back to the Commission for further rulings. This assignment of error is overruled.

Accordingly, the opinion and award of the Commission is remanded for additional findings.

Remanded.

Judges McGEE and GEER concur.