An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-111

NORTH CAROLINA COURT OF APPEALS

Filed:  16 September 2014

STATE OF NORTH CAROLINA

    v.

REGINALD WILLIS

Sampson County
Nos. 12 CRS 50372-73

Appeal by the State from order entered 7 October 2013 by Judge Arnold Jones in Sampson County Superior Court.  Heard in the Court of Appeals 5 June 2014.

> *Roy Cooper, Attorney General, by Teresa M. Postell, Assistant Attorney General, for the State.*

> *Amanda S. Zimmer for defendant-appellee.*

DAVIS, Judge.

The State appeals from the trial court's 7 October 2013 order granting a motion to suppress filed by Reginald Willis ("Defendant").  After careful review, we vacate and remand to the trial court for further proceedings.

## Factual Background

On 16 February 2012, Corporal Nick Pope ("Corporal Pope"), a deputy sheriff employed by the Sampson County Sheriff's

Office[1], was sitting in his patrol car, stationed in the center median of Interstate 40 at mile marker 351, when Defendant's vehicle drove by him. Corporal Pope thought it "looked weird" that he was only able to see Defendant's hat because Defendant "was leaning so far back and so low in the seat" as if "he was hiding himself from [Corporal Pope]."

Corporal Pope pulled into the left lane and followed Defendant for approximately four miles. Immediately after Corporal Pope pulled onto the highway, Defendant switched lanes, "indicating to [Corporal Pope] that he was still busy looking at [Corporal Pope] in the rearview mirror." As Corporal Pope followed Defendant, he noticed Defendant was "not driving straight" as well as the fact that Defendant had "weav[ed] from the solid, fog line to the center divider line" and "crossed . . . the white fog line, on more than one occasion." Corporal Pope called a backup officer and informed him that he was going to initiate a traffic stop based on Defendant's traffic violation.

As Corporal Pope approached the passenger side of Defendant's stopped vehicle, Defendant rolled the window down, at which point the odor of "raw marijuana hit [Corporal Pope] in

---

[1] On the date of the suppression hearing, Corporal Pope was employed as a trooper by the North Carolina State Highway Patrol.

the face." There were no other passengers in Defendant's vehicle.

Defendant handed Corporal Pope his New Jersey driver's license and a rental agreement entered into in Wilmington, North Carolina, indicating the vehicle had been rented to a female who was not in the vehicle. Defendant initially told Corporal Pope that he was returning home to New Jersey but then "immediately changed his story, [stating] that he was heading to Winston-Salem." Corporal Pope also noticed that Defendant had "tobacco guts" on his shirt and in his lap, which he knew "came from rolling a marijuana joint or blunt from a cigar" based on his having received over 256 hours of training in criminal and drug interdiction.

Corporal Pope asked Defendant to step out of the vehicle. When he asked Defendant about the "tobacco guts" on his shirt, Defendant "brushed them off his shirt really quick, like he didn't want [Corporal Pope] to see them." Corporal Pope conducted a *Terry*[2] search of Defendant to check for "weapons, firearms, knives, or anything that could hurt [him]." When

---

[2] In *Terry*, the Supreme Court held that a police officer who "has reason to believe that he is dealing with an armed and dangerous individual" may conduct a limited pat-down of the individual for weapons regardless of whether he has probable cause to make an arrest. *Terry v. Ohio*, 392 U.S. 1, 27, 20 L.E.2d 889, 909 (1968).

Corporal Pope did not find any weapons, he asked Defendant to sit in the passenger seat of his patrol car.

Corporal Donald Carter ("Corporal Carter"), another deputy sheriff with the Sampson County Sheriff's Office Criminal Interdiction Team, arrived on the scene to assist Corporal Pope. Corporal Pope asked Corporal Carter to sit with Defendant while he conducted a search of Defendant's vehicle "based on the smell of marijuana."

Corporal Pope searched Defendant's vehicle and found "bright green" marijuana residue mixed with brown tobacco in the floorboard, seat, and cup holder. Corporal Pope also searched the center console of the vehicle and found "large bundles of U.S. currency" in the total amount of $6,052.00 and several cell phones.

Corporal Pope informed Corporal Carter about what he had found in Defendant's vehicle, and Corporal Carter decided to conduct a more extensive search of Defendant's person because he "still smelled an extreme odor of marijuana emitting from [Defendant's] person." During this search, Corporal Carter reached into Defendant's back pocket and found three small wax paper bags that he believed to contain heroin.

Defendant was then handcuffed, told he was under arrest, and placed in the front seat of Corporal Pope's patrol vehicle. The bags were placed in the center console of Corporal Pope's vehicle. Although Defendant was handcuffed, he was able to gain access to the bags and "attempted to tear them up into pieces."

Approximately 15 to 20 minutes after Defendant was placed in handcuffs, Corporal Pope retrieved his drug-sniffing dog from the back seat of his patrol vehicle to see if the dog could detect the presence of any narcotics in Defendant's vehicle. The dog immediately indicated the presence of narcotics at the driver's side door of Defendant's vehicle. The deputies placed the currency found in Defendant's vehicle into a paper bag, and the dog detected "the presence of narcotic odor on the bag which contained the currency."

On 2 April 2012, Defendant was indicted by a Sampson County grand jury on charges of (1) possession of heroin; (2) possession of up to one half ounce of marijuana; (3) possession of drug paraphernalia; and (4) altering or destroying criminal evidence. On 17 April 2012, Defendant filed a motion to suppress, alleging that the vehicle stop, the search of the vehicle, and the search of his person were unlawful and that all evidence seized as a result should be suppressed.

Defendant's motion to suppress was heard in Sampson County Superior Court on 12 August 2013. On that same day, the trial court announced that it was granting Defendant's motion. On 7 October 2013, the trial court entered a written order containing, in pertinent part, the following findings of fact:

6. Cpl. Nick Pope with the Sampson County Sheriff's Department was working traffic patrol on Interstate 40 at approximately 10:30 am on February 16, 2012 when he observed the Defendant's vehicle driving westbound.

7. Cpl. Pope stated the driver appeared overly nervous, had his ball cap pulled low and was leaned back in the seat.

8. Cpl. Pope then pulled out and followed the vehicle for approximately four miles.

9. Cpl. Pope indicated the vehicle was weaving within the lane and then crossed the fog line multiple times.

10. Cpl. Pope stated he did not pull the vehicle immediately upon observing the traffic violation as he had to check multiple factors such as the location of his back up, the number of occupants of the vehicle, if any minors were in the vehicle, and to make further observations of the vehicle.

11. Cpl. Pope stated his in car camera was not operational on the date of the stop.

12. Cpl. Pope activated his blue lights and sirens and the Defendant pulled the car onto the shoulder of the highway.

13. Cpl. Pope stated he smelled what he believed to be and [sic] extremely strong odor of marijuana.

14. Cpl. Pope stated he knew through his training and experience that drugs are often accompanied by guns.

15. Cpl. Pope stated the driver's hands were shaking and he appeared nervous, the vehicle was a rental and had been rented to a third party not in the vehicle, the Defendant gave two different destinations when being questioned by the officer. All of which in his training and experience are evidence of drug activity.

16. Cpl. Pope asked the driver to exit the vehicle and conducted frisked [sic] the Defendant before placing him into the front seat of the patrol vehicle.

17. Cpl. Pope requested backup, Cpl. Carter responded.

18. Cpl. Carter's in car camera was also not operational on the date of this action.

19. Cpl. Carter stated he could smell the odor of marijuana coming from the defendant's person as soon as he walked up to the passenger side of the patrol car where the defendant was sitting.

20. Cpl. Pope searched the suspect vehicle and located marijuana residue and a large amount of US Currency from the suspect vehicle.

21. Cpl. Cater [sic] stated he then removed the Defendant from the patrol vehicle and searched the driver again because he knew there must be more marijuana on the Defendant since only residue was found in

the vehicle.

22. During this second search, Cpl. Carter discovered three bags of heroine [sic] in the Defendant's pant pocket.

23. The Defendant was then handcuffed and placed back into the patrol vehicle.

The trial court then made the following conclusions of law:

1. The stop of the vehicle was lawful due to Cpl. Pope's observation of the traffic violation of weaving within the lane and crossing the fog line as well as his subjective opinion of the Defendant's level of nervousness.

2. Cpl. Pope's frisk of the Defendant for weapons was valid.

3. [A]t the time that Cpl. Carter searched the Defendant for the second time, the Defendant was not free to leave the scene and was seized within the meaning of the Fourth Amendment on [sic] the Constitution of the United States, the Constitution of the State of North Carolina and case law such as Minnesota v. Dickerson, 508 U.S. 366 (1993).

4. During the seizure of the Defendant, Cpl. Carter conducted an illegal search without a search warrant as the Defendant had previously been frisked for weapons.

Based on these conclusions of law, the trial court ordered "all of the evidence obtained as a result of the unreasonable search . . . [be] suppressed as fruit of the poisonous tree . . . ." The State appealed to this Court.

**Analysis**

This Court's review of a trial court's ruling concerning a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke,* 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Any findings of fact that are not challenged on appeal are "deemed to be supported by competent evidence and are binding on appeal." *State v. Roberson,* 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36, *disc. review denied*, 358 N.C. 240, 594 S.E.2d 199 (2004). Our review of a trial court's conclusions of law is *de novo*. *State v. Kincaid,* 147 N.C. App. 94, 97, 555 S.E.2d 294, 297 (2001).

We believe the trial court's order must be vacated for two reasons. First, virtually every "finding of fact" the trial court made in its suppression order merely recited that Corporal Pope or Corporal Carter had *stated* that particular fact. "Recitations of the testimony of each witness *do not* constitute *findings of fact* by the trial judge." *In re Bullock*, ___ N.C. App. ___, ___, 748 S.E.2d 27, 30 (2013) (citation and quotation marks omitted); *see Lane v. Am. Nat'l Can Co.,* 181 N.C. App.

527, 531, 640 S.E.2d 732, 735 (2007) ("[F]indings of fact must be more than a mere summarization or recitation of the evidence . . . ."), *disc. review denied*, 362 N.C. 236, 659 S.E.2d 735 (2008). If the trial court includes the recitation of testimony in its suppression order, "our review is limited to . . . facts found by the trial court and the conclusions reached in reliance on those facts, *not* the testimony recited by the trial court in its order." *State v. Derbyshire*, ___ N.C. App. ___, ___, 745 S.E.2d 886, 893 (2013), *disc. review denied*, ___ N.C. ___, 753 S.E.2d 785 (2014).

It is well established that where, as here, "the trial court fails to make findings sufficient to allow the reviewing court to apply the correct legal standard, it is necessary to remand the case to the trial court." *State v. Salinas*, 366 N.C. 119, 124, 729 S.E.2d 63, 67 (2012). We therefore vacate the trial court's order and remand this action for the entry of actual factual findings.

Second, we believe that remand is also necessary because the trial court utilized the incorrect legal framework in evaluating Defendant's motion to suppress. Both this Court and our Supreme Court have recognized that remand may be appropriate in instances in which the trial court has applied the wrong

legal standard. *See State v. Buchanan*, 353 N.C. 332, 339-40, 543 S.E.2d 823, 828 (2001) ("The trial court in the instant case mistakenly applied the broader 'free to leave' test in determining whether defendant was 'in custody' for the purposes of *Miranda*. We therefore remand the case to the trial court for a redetermination of whether a reasonable person in defendant's position, under the totality of the circumstances, would have believed he was under arrest or was restrained in his movement to the degree associated with a formal arrest."); *State v. Williams*, 195 N.C. App. 554, 561, 673 S.E.2d 394, 398-99 (2009) ("Where . . . the trial court mistakenly applies an incorrect legal standard in determining whether a defendant's constitutional rights have been violated for purposes of a motion to suppress, the appellate court must remand the matter to the trial court for a 'redetermination' under the proper standard.").

In the present case, during the suppression hearing, the trial court stated as follows:

> I find that the defendant was not free to leave. And consistent with <u>Minnesota versus Dickerson</u>, when the defendant's back pocket was manipulated and the heroin was pulled out, that was a violation of his Fourth Amendment rights. That went beyond a frisk. He hadn't been advised of his rights. He wasn't free to leave. As it relates to the

> heroin pulled out of his pocket, I'll order that suppressed. That wasn't valid according to the law.

The trial court then memorialized this ruling in conclusion of law 3 of its written order, stating that

> at the time that Cpl. Carter searched Defendant for the second time, the Defendant was not free to leave the scene and was seized within the meaning of the Fourth Amendment on [sic] the Constitution of the United States, the Constitution of the State of North Carolina and case law such as <u>Minnesota v. Dickerson</u>, 508 U.S. 366 (1993).

In *Minnesota v. Dickerson*, the case the trial court relied upon in concluding that the search of Defendant was unlawful, the United States Supreme Court held that a police officer may seize nonthreatening contraband obtained during a warrantless *Terry* pat-down for weapons as long as the search stays within the scope of *Terry* and the incriminating nature of the object is immediately apparent. *Dickerson*, 508 U.S. 366, 379, 124 L.E.2d 334, 348 (1993). The Supreme Court held that the search in *Dickerson* had exceeded the lawful bounds set out in *Terry* because the officer had to physically manipulate the object in the defendant's pocket in order to determine its incriminating nature. *Id.*

Here, however, Corporal Pope had already completed a protective frisk of Defendant for weapons. Corporal Carter's

subsequent physical search of Defendant was not a *Terry* frisk but rather was a warrantless physical search of Defendant's person based on the deputy's belief that probable cause existed for the search. As such, the trial court's analysis of the search under *Dickerson* was erroneous.

Because the trial court's conclusion that the search was unconstitutional was premised on the fact that "Defendant had previously been frisked for weapons," the court did not analyze whether the search was valid on other grounds. While the trial court noted that the search was conducted without a search warrant, the analysis of whether the search was constitutional should not have ended there. *See State v. Allison*, 298 N.C. 135, 141, 257 S.E.2d 417, 421 (1979) ("A warrantless search is not unconstitutional . . . when (1) probable cause to search exists and (2) the government satisfies its burden of demonstrating that the exigencies of the situation made search without a warrant imperative.").

Indeed, as the State points out, this Court has previously upheld a warrantless search of a defendant based on the odor of marijuana emanating from the defendant's person. *See State v. Yates*, 162 N.C. App. 118, 123, 589 S.E.2d 902, 905 (2004) (concluding that probable cause and exigent circumstances

justified officer's warrantless search of defendant where (1) defendant walked by law enforcement officer twice "emanating a strong odor of marijuana, and each time defendant was alone"; and (2) immediate search was warranted because officer's partner was occupied and "narcotics can be easily and quickly hidden or destroyed").

However, the issue of whether a warrantless search is constitutionally valid based on probable cause and exigent circumstances is a case-by-case determination that must be made by the finder of fact. *State v. Harper*, 158 N.C. App. 595, 602, 582 S.E.2d 62, 67 ("Generally, warrantless searches are not allowed absent probable cause and exigent circumstances, the existence of which are factual determinations that must be made on a case by case basis."), *appeal dismissed and disc. review denied*, 357 N.C. 509, 588 S.E.2d 372 (2003). Accordingly, we remand to the trial court for determination of the legal issues raised by Defendant's motion to suppress

> because it is the trial court that is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based upon those findings, render a legal decision, in the first instance, as to whether or not a constitutional violation of some kind has occurred.

*Salinas*, 366 N.C. at 124, 729 S.E.2d at 67 (citation and quotation marks omitted).

## Conclusion

For the reasons stated above, we vacate and remand for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED.

Judges HUNTER, JR. and ERVIN concur.

Report per Rule 30(e).

Judge HUNTER, JR. concurred in this opinion prior to 6 September 2014.