IN THE SUPREME COURT OF NORTH CAROLINA

No. 216A16

Filed 9 June 2017

KERRY RAY HARRISON, Employee

v.

GEMMA POWER SYSTEMS, LLC,
        Employer,

TRAVELERS INSURANCE COMPANY,
        Carrier

Appeal pursuant to N.C.G.S. § 7A-30(2) from the unpublished decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 786 S.E.2d 433 (2016), affirming an amended opinion and award filed on 4 March 2015 by the North Carolina Industrial Commission. Heard in the Supreme Court on 22 March 2017.

*Poisson, Poisson & Bower, PLLC, by E. Stewart Poisson, for plaintiff-appellant.*

*Orbock, Ruark & Dillard, P.C., by Jessica E. Lyles and Roger L. Dillard, Jr., for defendant-appellees.*

HUDSON, Justice.

In the Court of Appeals, plaintiff employee challenged the Industrial Commission's determination that he is not entitled to any compensation for permanent partial disability under N.C.G.S. § 97-31. The Court of Appeals, in a divided opinion, affirmed the denial, and plaintiff appealed to this Court on the basis of the dissenting opinion. We reverse the decision of the Court of Appeals and remand this case for further proceedings.

This summary of facts is based on the stipulations of the parties as well as the forms in the record and the unchallenged findings of fact in the most recent opinion and award filed on 4 March 2015. On 2 March 2001, plaintiff, a pipefitter, suffered a compensable accident and sustained injuries to his left upper leg, neck, and other areas of his body when a heavy valve fell on his head, while he was walking at his job site. Defendants, his employer at the time and its workers' compensation insurance carrier, accepted plaintiff's claim as compensable under the Workers' Compensation Act (Act). Plaintiff received medical treatment for his injuries for a period of several years, but defendants eventually refused to authorize additional medical treatment. Defendants have handled the claim as medical only from its onset, and plaintiff has never received indemnity payments.

After his work-related accident, plaintiff immediately complained of neck pain and headaches, and he received prompt treatment from an authorized medical provider, who documented plaintiff's complaints of headaches and neck pain. Plaintiff was referred to chiropractor Larry Stogner for care. Plaintiff attempted to return to work for defendant employer by doing light duty tasks, but he was laid off on 22 April 2001. On 27 June 2001, Dixon Gerber, M.D., an orthopaedic surgeon, saw plaintiff for a second opinion examination and found that plaintiff "was at maximum medical improvement and had no permanent partial disability." Dr. Gerber's medical record also reflected plaintiff's impression that he "could probably return to work at any time." Dr. Gerber released plaintiff from treatment without restrictions as of 2

July 2001, four months after plaintiff's work-related accident.

Defendant employer re-hired plaintiff but shortly thereafter terminated him for missing work and tardiness. After that, plaintiff worked for other employers, also as a pipefitter. Plaintiff testified that he had to stop working as a pipefitter in February 2003 because of his ongoing neck pain. Plaintiff then worked in other occupations until May 2009, and he received unemployment benefits when he was not working during that time. Plaintiff became a full-time community college student in May 2009.

During the years after his work-related accident, plaintiff continued to have neck pain, and in October 2002, defendants referred him for an independent medical examination by Robert Lacin, M.D., at Goldsboro Neurological Surgery. Dr. Lacin opined that he "certainly ha[d] no doubt that [plaintiff's] symptoms are related to this incident of March 2, 2001."

In December 2003, plaintiff began treatment with Hemanth Rao, M.D., at Neurology Consultants of the Carolinas. An MRI in November 2006 showed that plaintiff had evidence of a continuing injury, for which he was referred for a surgical opinion. Plaintiff received an independent medical evaluation from Alfred Rhyne, M.D., at OrthoCarolina in April 2009, after which Dr. Rhyne recommended another MRI. Dr. Rhyne later testified that if plaintiff had no complaints of pain or problems before his March 2001 workplace injury, that injury "precipitated the onset of his

symptoms." Defendants did not authorize the MRI as recommended by Dr. Rhyne.

Plaintiff subsequently received an MRI at the Veterans Affairs Medical Center in Fayetteville, North Carolina. A medical record from that facility dated 9 August 2010 diagnosed "[m]ultilevel cervical spondylosis seen in the lower cervical spine, most prominent at C5 and C6." Chiropractor Stogner, who had treated plaintiff since shortly after his injury, also opined that it was "more probable than not" that the 2 March 2001 workplace accident caused plaintiff's neck problems and stated that he does "not expect to see any significant improvement with [plaintiff's] injury status [as he] suspect[s] that [plaintiff's] condition is permanent."

Defendants' last payment of medical compensation to plaintiff was on 18 May 2009. Plaintiff enrolled in college full time in May 2009, graduated with an associate's degree in May 2012, and at the time his case was heard before the deputy commissioner, was a full-time student pursuing a bachelor's degree in business. Plaintiff worked part time at a desk job while he was a student.

On 25 January 2012, plaintiff filed a Form 33 with the Industrial Commission, asserting that defendants "ha[d] failed to authorize plaintiff's request for further treatment with Dr. Rhyne" and contending that there was also "an issue with indemnity benefits." In their response to this filing, defendants stated that the claim "is barred by the statute of limitations [in] G.S. §97-24. Plaintiff's claim is a no lost time claim. This claim was medical only and it has been more than two years since

the last payment of medical compensation."

On 7 February 2013, a deputy commissioner ordered that, to the extent they had not done so, defendants provide (pay for) all medical treatment for plaintiff's neck condition for the period between the date of injury through 18 May 2009. The deputy denied plaintiff's claim for additional benefits under the Act. Plaintiff appealed to the Full Commission (Commission), which affirmed the deputy commissioner's opinion and award on 16 September 2013.

Plaintiff appealed the Commission's opinion and award to the North Carolina Court of Appeals, arguing, *inter alia*, that the Commission's findings of fact were inadequate and that the record evidence entitled him to permanent impairment indemnity benefits. *Harrison v. Gemma Power Sys., LLC*, 234 N.C. App. 664, 763 S.E.2d 17, 2014 WL 2993853 (2014) (unpublished) (*Harrison I*). Specifically, plaintiff argued that Finding of Fact 22 was not supported by competent evidence and that it irreconcilably conflicted with Finding of Fact 25. *Harrison I*, 2014 WL 2993853, at *10.

Finding of Fact 22 reads:

> 22. Dr. Rhyne testified that plaintiff's probable permanent partial disability would be three percent (3%), or if plaintiff had to have surgery, the rating would be in the range of five to fifteen percent (5-15%). The Commission assigns greater weight to the testimony of Dr. Gerber regarding plaintiff's permanent partial disability rating as Dr. Gerber was plaintiff's authorized treating physician and Dr. Rhyne only performed a one time

HARRISON v. GEMMA POWER SYS., LLC

independent medical evaluation. Therefore, based on Dr. Gerber's testimony, the Commission finds plaintiff has no permanent partial disability.

In Finding of Fact 5, the Commission noted that "Dr. Gerber found that plaintiff was at maximum medical improvement and has no permanent partial disability" and "released plaintiff from treatment without restrictions as of 2 July 2001."

Finding of Fact 25 reads:

> 25. Based upon the preponderance of the evidence in view of the entire record, the medical treatment plaintiff received for his neck condition, on or before 18 May 2009, was reasonable and medically necessary, and was reasonably calculated to effect a cure and give relief from plaintiff's 2 March 2001 compensable injury by accident.

Based on these findings, the Commission reached Conclusion of Law 2, that "[p]laintiff is entitled to the provision of medical treatment for his neck condition for the period from 2 March 2001 through 18 May 2009."

In a unanimous, unpublished opinion filed on 1 July 2014, the Court of Appeals, *inter alia*, reversed the Commission's denial of indemnity benefits, concluding that the Commission's findings and conclusions on that issue were "inadequate." *Id.* at *1. Specifically, the Court of Appeals agreed with plaintiff that Finding of Fact 22 lacked evidentiary support but disagreed that Findings of Fact 22 and 25 are irreconcilable. *Id.* at *10. With respect to Findings of Fact 22 and 25, the Court of Appeals stated:

> [A] finding that Plaintiff is at maximum medical improvement with no permanent partial disability denotes that Plaintiff's compensable injury has healed and/or stabilized, with no permanent functional loss to his neck and/or back. The fact that Plaintiff has no *permanent* functional impairment, however, does not mean, *ipso facto*, that ongoing medical treatment will not be necessary to "effect a cure and give relief" to the underlying injury.

*Id.* The Court of Appeals instructed: "[I]f, on remand, the Full Commission again finds Plaintiff to have no permanent partial impairment, the Full Commission is instructed to enter additional findings reconciling that finding with Finding of Fact 25." *Id.* The Court of Appeals remanded the case to the Commission "for additional findings of fact and conclusions of law on the issue of Plaintiff's entitlement to permanent partial impairment benefits under N.C. Gen. Stat. § 97-31." *Id.* at *11.

On 4 March 2015, the Commission filed an amended opinion and award that made no change to its ultimate decision, including denying all additional benefits to plaintiff under the Act. In the amended opinion and award, however, the Commission modified Findings of Fact 22 and 25 (listed as Findings of Fact 23 and 26 in the amended opinion and award), as well as Conclusion of Law 2. It also added Conclusion of Law 6.

In Finding of Fact 23 of the amended opinion and award (amending Finding of Fact 22), the Commission bolstered its reasoning for assigning greater weight to the opinion of Dr. Gerber over that of Dr. Rhyne regarding the permanent partial disability rating. Finding of Fact 23 (amending Finding of Fact 22) now reads:

23. Dr. Rhyne testified that plaintiff's probable permanent partial disability would be three percent (3%), or if plaintiff had to have surgery, the rating would be in the range of five to fifteen percent (5-15%). The Commission assigns greater weight to the opinion of Dr. Gerber regarding plaintiff's permanent partial disability rating as detailed in Dr. Gerber's 27 June 2001 medical record. The Commission bases the decision to assign more weight to Dr. Gerber's opinion regarding the permanent partial disability rating on the fact that Dr. Gerber was able to examine plaintiff in close temporal proximity to plaintiff's compensable injury and also provided his opinion on plaintiff's permanent partial disability at the time of his examination. Dr. Gerber's record noted plaintiff's statement to him that plaintiff felt he could probably return to work, and found plaintiff to be at maximum medical improvement with no permanent disability and to have no work restrictions. Dr. Gerber's examination was on 27 June 2001, less than four months after plaintiff's injury, as compared to Dr. Rhyne, who did not examine plaintiff until 27 April 2009, more than eight years after plaintiff's injury and gave his opinion on plaintiff's permanent partial disability rating more than three years after his examination of plaintiff in October of 2012. Therefore, based on Dr. Gerber's 27 June 2001 medical record, the Commission finds that plaintiff reached maximum medical improvement on 27 June 2001 and that plaintiff has no permanent partial disability.

Also, the Commission reconciled Findings of Fact 22 and 25. In the amended opinion and award, Finding of Fact 26 (amending Finding of Fact 25) now reads:

26. Based upon the preponderance of the evidence in view of the entire record, the medical treatment plaintiff received for his neck condition, on or before 18 May 2009, was reasonable and medically necessary, and was reasonably calculated to give relief from plaintiff's 2 March 2001 compensable injury by accident. The Commission notes that even though plaintiff is determined to have reached maximum medical improvement on 27

June 2001, that determination is not inconsistent with plaintiff continuing to receive additional medical treatment to provide relief from his compensable injury by accident.

Conclusion of Law 2 in the amended opinion and award now reads:

> 2.     Plaintiff is entitled to the provision of medical treatment for his neck condition for the period from 2 March 2001 through 18 May 2009.  N.C. Gen. Stat. §§ 97-25; 97-25.1.  The Commission further concludes that even though the medical treatment plaintiff received subsequent to his full duty release could not lessen his period of disability, the medical treatment he did receive provided relief.  The Supreme Court of North Carolina has instructed:
>
> > N.C.G.S. § 97-25 does not, however, limit an employer's obligation to pay future medical expenses to those cases in which such expenses will lessen the period of disability.  The statute also requires employers to pay the expenses of future medical treatments even if they will not lessen the period of disability as long as they are reasonably required to (1) effect a cure or (2) give relief.
>
> *Little v. Penn Ventilator Co.*, 317 N.C. 206, 210, 345 S.E.2d 204, 207 (1986).  Therefore, the Commission concludes that plaintiff is entitled to the provision of medical treatment following his full duty release through 18 May 2009 as the medical treatment he received provided relief from his compensable injury.

Newly added Conclusion of Law 6 reads:  "Based upon Dr. Gerber's assignment of a zero percent (0%) permanent partial disability rating, plaintiff is not entitled to any compensation for permanent partial disability."

These excerpts demonstrate the Commission's attempts to bolster its

reasoning for assigning greater weight to the opinion of Dr. Gerber over that of Dr. Rhyne regarding the permanent partial disability rating and to reconcile the determination that plaintiff is entitled to medical treatment for his neck condition for the period from 2 March 2001 through 18 May 2009 (Finding of Fact 26, Conclusion of Law 2) with the determination that plaintiff is not entitled to any compensation for permanent partial disability (Finding of Fact 23, Conclusion of Law 6).

In the amended opinion and award, the Commission also added Finding of Fact 29, which reads in pertinent part: "[O]n 30 January 2009, plaintiff was assigned work restrictions of no lifting greater than twenty (20) pounds and no reaching overhead. Those restrictions rendered plaintiff's pre-injury job unsuitable as it would exceed both the lifting restriction and the prohibition on reaching overhead."

Plaintiff again appealed the Commission's decision to the Court of Appeals, which, in an unpublished, divided opinion filed on 3 May 2016, affirmed the amended opinion and award. *Harrison v. Gemma Power Sys., LLC*, ___ N.C. App. ___, 786 S.E.2d 433, 2016 WL 1744423 (2016) (unpublished) (*Harrison II*). The majority considered plaintiff's argument that the Commission made an additional finding of fact in the amended opinion and award that plaintiff was assigned work restrictions on 30 January 2009, and therefore, the Commission's finding "recogniz[ed] a loss of functional ability due to injury" that amounted to a " 'functional abnormality' after maximum medical improvement because he can no longer perform his pre-injury job due to accident-related restrictions." *Harrison II*, 2016 WL 1744423, at *5.

Therefore, according to plaintiff, the Commission's new finding establishes that he "has permanent partial impairment due to his injury," which finding is "irreconcilable with" a finding of fact and conclusion of law in the original opinion and award of the Commission. *Id.*

The majority found plaintiff's arguments unconvincing. *Id.* at *6. The majority concluded that although "competent record evidence . . . support[ed] the finding that" an examining physician imposed work restrictions on plaintiff on 30 January 2009, "the evidence does not indicate whether these restrictions were related to his 2 March 2001 injury in any way." *Id.*

The majority also noted that the Commission made an amended finding that "assigned greater weight to the opinion of Dr. Gerber regarding plaintiff's permanent partial disability, as opposed to the opinion of Dr. Rhyne." *Id.* at *7. Recognizing that "[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony," the majority held that the Commission "was entitled to place greater weight on the substance of Dr. Gerber's opinion." *Id.* Therefore, the Court of Appeals affirmed the amended opinion and award, holding that the Commission did not err in concluding that plaintiff is not entitled to any compensation for permanent partial disability. *Id.*

In contrast, the dissenting opinion concluded that the Commission again failed to properly determine whether plaintiff is entitled to compensation under N.C.G.S. §

97-31. *Id.* (Geer, J., dissenting). The dissent observed that the Commission found as fact that "as of 30 January 2009, plaintiff had a loss of function—a substantial limitation on his ability to lift a relatively modest weight and an inability to reach overhead." *Id.* at *8. The dissent did not agree "that the record contains no evidence that the 30 January 2009 restrictions were due to the 2 March 2001 compensable neck injury." *Id.* Rather, the dissent would conclude that, when read as a whole, the Commission's opinion and award establishes that "the Commission understood that the restrictions . . . assigned were due to plaintiff's compensable neck condition." *Id.* The dissent agreed with plaintiff that "the Commission's findings of fact do not support its conclusion that plaintiff suffers no permanent partial disability within the meaning of [section] 97-31"; therefore, the dissent would reverse the Commission's opinion and award on this issue and, to the extent necessary, remand this case "so that the Commission can clarify its findings" "regarding the source of the physical restrictions" placed on plaintiff. *Id.* at *9.

Plaintiff appealed based on the dissenting opinion. Plaintiff argues that the Commission's detailed findings of fact compel a conclusion that he suffers from permanent partial impairment as a result of his compensable injury and is therefore entitled to collect scheduled benefits under N.C.G.S. § 97-31.

We decline plaintiff's invitation to hold that the findings of fact in the amended opinion and award compel the conclusion that plaintiff retains permanent partial impairment as a result of his injury. "[T]he Commission is the sole judge of the

credibility of the witnesses and the weight of the evidence. . . . 'Thus, on appeal, this Court does not have the right to weigh the evidence and decide the issue on the basis of its weight.' " *Hassell v. Onslow Cty. Bd. of Educ.*, 362 N.C. 299, 305, 661 S.E.2d 709, 714 (2008) (citations omitted) (quoting *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998)). But, because we conclude that again the Commission has failed to adequately address the Court of Appeals' mandate that it make "additional findings of fact and conclusions of law on the issue of Plaintiff's entitlement to permanent partial impairment benefits under N.C. Gen. Stat. § 97-31," *Harrison I*, 2014 WL 2993853, at *11, we reverse the decision currently on appeal and remand this case to the Court of Appeals for further remand to the Commission to comply with the 2014 mandate of the Court of Appeals.

"In reviewing an opinion and award from the Industrial Commission, the appellate courts are bound by the Commission's findings of fact when supported by any competent evidence; but the [Commission's] legal conclusions are fully reviewable." *Lanning v. Fieldcrest-Cannon, Inc.*, 352 N.C. 98, 106, 530 S.E.2d 54, 60 (2000) (citing *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982)). Moreover, "[t]o enable the appellate courts to perform their duty of determining whether the Commission's legal conclusions are justified, the Commission must support its conclusions with sufficient findings of fact." *Gregory v. W.A. Brown & Sons*, 363 N.C. 750, 761, 688 S.E.2d 431, 439 (2010) (citing *Pardue v. Blackburn Bros. Oil & Tire Co.*, 260 N.C. 413, 415-16, 132 S.E.2d 747, 748-49 (1963)).

"Although the Commission need not find facts on every issue raised by the evidence, it is 'required to make findings on *crucial* facts upon which the right to compensation depends.'" *Cardwell v. Jenkins Cleaners, Inc.*, 365 N.C. 1, 2-3, 704 S.E.2d 898, 899 (2011) (per curiam) (quoting *Watts v. Borg Warner Auto., Inc.*, 171 N.C. App. 1, 5, 613 S.E.2d 715, 719 (emphasis added), *aff'd per curiam*, 360 N.C. 169, 622 S.E.2d 492 (2005)). "Where the findings are insufficient to enable the court to determine the rights of the parties, the case must be remanded to the Commission for proper findings of fact." *Watts*, 171 N.C. App. at 5, 613 S.E.2d at 719 (quoting *Lawton v. County of Durham*, 85 N.C. App. 589, 592, 355 S.E.2d 158, 160 (1987)).

Under the Workers' Compensation Act, an injured employee who suffers some degree of loss or permanent injury to a body part, as enumerated in N.C.G.S. § 97-31,[1] is entitled to collect permanent disability compensation for a "statutorily-prescribed period of time . . . which begins when the healing period ends and runs for the specific number of weeks set forth in the statute." *Knight v. Wal-Mart Stores, Inc.*, 149 N.C. App. 1, 11, 562 S.E.2d 434, 442 (2002), *aff'd per curiam*, 357 N.C. 44, 577 S.E.2d 620 (2003); *see also* N.C.G.S. § 97-31 (2015). "[T]he healing period . . . ends at the point when the injury has stabilized, referred to as the point of 'maximum

---

[1] N.C.G.S. § 97-31 lists a schedule of injuries and the rate and period of compensation for each, and specifically indicates that: "In cases included by the following schedule the compensation in each case shall be paid for disability during the healing period and in addition the disability shall be deemed to continue for the period specified, and shall be in lieu of all other compensation . . . ." N.C.G.S. § 97-31 (2015).

medical improvement'. . . ." *Knight*, 149 N.C. App. at 12, 562 S.E.2d at 442 (citations omitted).

At that point, a treating or evaluating physician typically assigns to the injured employee a "permanent partial impairment rating," which corresponds to the degree of permanent impairment to the body part. *See generally North Carolina Workers' Compensation Law: A Practical Guide to Success at Every Stage of a Claim* 167-68 (Valerie A. Johnson & Gina E. Cammarano eds., 3d ed. 2016) [hereinafter *Workers' Compensation Law*]; *see also* N.C.G.S. § 97-31; N.C. Indus. Comm'n, *N.C. Industrial Commission Rating Guide* sec. 1, http://www.ic.nc.gov/ncic/pages/ratinggd.htm http://www.ic.nc.gov/ncic/pages/ratinggd.htm (last updated July 8, 2016) (last visited June 3, 2017) [hereinafter *Indus. Comm'n Rating Guide*] ("Permanent physical impairment is any anatomical or functional abnormality or loss after maximum medical rehabilitation has been achieved and which abnormality or loss the physician considers stable or non-progressive at the time the evaluation is made."). This rating often determines the benefits to which the injured employee is entitled. *See generally Workers' Compensation Law* 167-68; *see also* N.C.G.S. § 97-31; *Indus. Comm'n Rating Guide*.

The *N.C. Industrial Commission Rating Guide* is an Industrial Commission publication "made available to the physicians of the State of North Carolina" that is intended to be used "as a guide and basic outline for physicians making rating examinations of individuals who have had industrial injuries." *Indus. Comm'n*

*Rating Guide* sec. 2.  In addition to the specific impairment descriptions provided in the *Guide* for various body parts, the *Guide* recognizes that "in many cases there are intangible factors which cannot be stereotyped but must be considered," including but not limited to "pain, weakness, and dexterity."  *Id.*

Additionally, an injured employee is eligible for compensation under N.C.G.S. § 97-31 "regardless of whether the employee has, in fact, suffered a loss of wage-earning capacity," because unlike all other types of disability benefits, "disability is presumed from the fact of the injury itself."  *Knight*, 149 N.C. App. at 11, 562 S.E.2d at 442 (citation omitted).

Thus, to receive benefits for permanent injury under N.C.G.S. § 97-31, ordinarily, the plaintiff must establish that he or she has reached the point of maximum medical improvement and has a permanent impairment.  A showing of maximum medical improvement indicates that the healing period has ended, and the "permanent partial impairment rating" indicates the degree of permanent damage or loss sustained to a body part.

Here the findings of fact are insufficient to enable this Court to determine the plaintiff's right to benefits under N.C.G.S. § 97-31.  In *Harrison I* the Court of Appeals remanded this case to the Commission, mandating that the Commission make "additional findings of fact and conclusions of law on the issue of Plaintiff's entitlement to permanent partial impairment benefits under N.C. Gen. Stat. § 97-31."  *Harrison I*, 2014 WL 2993853, at \*11.  Although the Commission bolstered its

reasoning for assigning greater weight to the opinion of Dr. Gerber over that of Dr. Rhyne regarding the permanent partial disability rating in Finding of Fact 23 of the amended opinion and award, we conclude that the Commission has still failed to address adequately whether plaintiff retains any permanent impairment compensable under N.C.G.S. § 97-31.

The record here contains indications in medical records and treatment notes that plaintiff's injury may be permanent and ongoing. Various medical providers entered these notes well past the date of Dr. Gerber's 27 June 2001 medical evaluation. The record contains, *inter alia*, the following: (1) in 2003 Dr. Rice indicated that "at this juncture, [he] feel[s] [plaintiff] continues to have symptoms from his injuries which need to be addressed through the VA"; (2) in 2004 an evaluation from Carolina Complete Rehabilitation Center recommends therapy and indicates that plaintiff has "decreased mobility of [the] cervical region" and "continues to experience neck pain that increases with quick movements of [his] head and forward bending[, with his pain] rated at 7/10 in the scale of 0-10"; (3) in 2006 a report from Neurology Consultants of the Carolinas indicates that plaintiff "is a patient [they] have been following for headaches, neck pain, and painful paresthesias on the right upper extremity resulting from an accident at work," that plaintiff has "a mild disk bulge at the C6-77 level," and that plaintiff "has already been treated for this conservatively, but has not improved" so they will "refer him for a surgical opinion"; (4) in 2009 a medical record by Dr. Rhyne indicates that plaintiff's "MRI was

conclusive for a mild broad-based disk bulge at C6-C7 without evidence of spinal stenosis"; (5) in 2010 a progress note from the Fayetteville, North Carolina, Veterans Affairs Medical Center indicates that a "multilevel cervical spondylosis [is] seen in the lower cervical spine"; and (6) in 2012 Chiropractor Stogner's visit note indicates that "it is conclusive that [plaintiff] has some serious neck issues to consider," that "the combination of degenerative changes and ongoing restriction to movement . . . suggest that the accident is the cause of his ongoing problems," and that Chiropractor Stogner does "not expect to see any significant improvement with [plaintiff's] injury status and [he] suspect[s] that [plaintiff's] condition is permanent."

Despite these indications, the amended opinion and award does not contain adequate findings and conclusions on whether plaintiff has a permanent injury, taking into account all pertinent evidence. Without such findings, we are unable to review any determination regarding whether plaintiff is, in fact, entitled to benefits for permanent partial impairment under N.C.G.S. § 97-31.

Additionally, we hold that the Commission must modify Finding of Fact 23 and Conclusion of Law 6. Finding of Fact 23 either fails to adequately address the necessary issue, *Cardwell*, 365 N.C. at 2-3, 704 S.E.2d at 899, or it contains a mere recitation of the evidence rather than true findings. To the extent that the finding is simply a recitation of the evidence, it does not constitute a finding of fact sufficient to comply with the Act. *See, e.g.*, N.C.G.S. § 97-84 (2015); *Lane v. Am. Nat'l Can Co.*, 181 N.C. App. 527, 531, 640 S.E.2d 732, 735 (2007) ("This Court has long held that

findings of fact must be more than a mere summarization or recitation of the evidence and the Commission must resolve the conflicting testimony." (citations omitted)), *disc. rev. denied*, 362 N.C. 236, 659 S.E.2d 735 (2008); *Davis v. Weyerhaeuser Co.*, 132 N.C. App. 771, 776, 514 S.E.2d 91, 94 (1999) ("Although we 'interpret the Commission's practice of reciting testimony to mean that it does find the recited testimony to be a fact,' *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 442 n.7, 342 S.E.2d 798, 808 n.7 (1986), it is the Commission's duty to find the ultimate determinative facts, not to merely recite evidentiary facts and the opinions of experts."). Further, the Commission must explain its finding of no permanent impairment, given the nearly eight years of treatment between Dr. Gerber's medical opinion in June 2001 and 18 May 2009, when the condition was found compensable (Findings of Fact 25 and 26).

We conclude that the Commission has failed to carry out the Court of Appeals' mandate that it make additional findings of fact and conclusions of law on the issue of plaintiff's entitlement to benefits under N.C.G.S. § 97-31. For this reason, we reverse the decision of the Court of Appeals and remand this matter to that court for further remand to the Commission to comply with the 2014 mandate of the Court of Appeals in *Harrison I* and enter a new opinion and award not inconsistent with this opinion.

REVERSED AND REMANDED.